UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| LEAH CROSS, MARCO GRANGER-RIVERA, RYAN SCHILLING, and CASSIE WHINNIE, and those similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>AMAZON.COM, INC., and AMAZON LOGISTICS, INC.<br><br>   Defendants. | Case No. 1:23-CV-02099-NYW-SBP |

**DEFENDANTS AMAZON.COM, INC. AND AMAZON LOGISTICS, INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY CLAIMS PENDING ARBITRATION**

## I.  INTRODUCTION

Plaintiffs Leah Cross, Marco Granger-Rivera, Ryan Schilling, and Cassidy Whinnie (together, "Plaintiffs") worked as local delivery drivers for various Delivery Service Providers ("DSPs"). Before doing so, they entered binding agreements to individually arbitrate their disputes with their respective employers and with their employers' clients. Now, Plaintiffs seek to avoid their agreements to arbitrate by bringing this action against the DSPs' client Amazon for alleged violations of state wage-and-hour and anti-discrimination laws. Because the Plaintiffs agreed to resolve this dispute in individual arbitration, Amazon moves for an order compelling the Plaintiff's claims to individual arbitration and dismissing this action.

1

## II.   BACKGROUND

### A.   The DSPs Provide Local Delivery Services in Colorado.

Plaintiffs had different DSP employers—and one plaintiff, Marco Granger-Rivera, worked for multiple DSPs. Specifically, Plaintiff Leah Cross worked for Skybridge Delivery LLC; Plaintiff Ryan Schiller worked for Bison Peak LLC; and Plaintiff Marco Granger-River worked for Podium Logistics LLC, Peak Delivery Services, and Alpha Zulu Logistics LLC. Plaintiff Cassidy Whinnie worked for Tasty Trails Logistics LLC, and began the onboarding process with TenFour Logistics, LLC, through which she signed an arbitration agreement, but has not performed any work for it. Declaration of Alexis Cantwell-Badyna ("Cantwell-Badyna Decl."), Ex. A, ¶ 5; Declaration of Jeffrey Calloway ("Calloway Decl."), Ex. B, ¶ 3.

The DSP employers for whom Plaintiffs worked do business in Colorado, and their employees make local-only deliveries in Colorado for the DSPs' clients. Declaration of Carl Svanstrom ("Svanstrom Decl."), Ex. C, ¶ 2; Declaration of Brian Baugh ("Baugh Decl."), Ex. D., ¶ 2; Declaration of Sheena Ferguson ("Ferguson Decl.), Ex. E, ¶ 2; Declaration of Aaron Everitt ("Everitt Decl."), Ex. F, ¶ 2; Declaration of William Boyd ("Boyd Decl."), Ex. G, ¶ 2; Declaration of Tasha Elliott ("Elliott Decl."), Ex. H, ¶ 2. Each of these DSPs includes Amazon as a client. *Id.* Through that client relationship, the DSPs' employees deliver packages to Amazon customers who order the products from Amazon's website. *Id.*; *see also* Cantwell-Badyna Decl., ¶ 4. In delivering packages to Amazon customers, the DSPs' delivery employees pick up the packages in Colorado and complete their deliveries within the local delivery area. Svanstrom Decl., ¶¶ 2-3; Baugh Decl., ¶¶ 2-3; Ferguson Decl., ¶¶ 2-3; Everitt Decl., ¶¶ 2-3; Boyd Decl., ¶¶ 2-3; Elliott Decl., ¶¶ 2-3.

### B. Plaintiffs Signed Agreements Requiring Arbitration of All Disputes Related to Their Employment with the DSPs.

Plaintiffs completed similar onboarding processes when applying to work for their respective DSP employers. Cross applied with Skybridge on or about September 2022; Schiller applied with Bison Peak on or about August 2022; Granger-Rivera applied with Podium Logistics on or about February 2020, Alpha Zulu on or about November 2020, and Peak Delivery on or about December 2022; and Whinnie applied with Tasty Trails Logistics on or about February 2022 and TenFour Logistics (not yet completed) in or about October 2023. Cantwell-Badyna Decl., ¶¶ 7-10; *see also* Svanstrom Decl., ¶¶ 3, 14; Baugh Decl., ¶¶ 3, 14; Ferguson Decl., ¶¶ 3, 14; Everitt Decl., ¶¶ 3, 14; Boyd Decl., ¶¶ 3, 14; Elliott Decl., ¶¶ 3, 14.

As part of this process, Plaintiffs executed similar arbitration agreements entitled "Mutual Agreement to Individually Arbitrate Disputes" (the "Agreement"). Cantwell-Badyna Decl., Exhibit ["Ex."] A. The Agreement provides that the Plaintiffs and DSP Employers "agree that any covered claim … shall be submitted to binding arbitration." *Id.*, p. 1. "Covered Claims" are defined as "all past, current, and future grievances, disputes, claims, issues, or causes of action … under applicable federal, state or local laws, arising out of or relating to" the Plaintiffs' "application, hiring, hours worked, services provided, and/or employment with the Company or the termination thereof," or "a Company policy or practice, or the Company's relationship with or to a customer, vendor, or third party," including "issues regarding benefits, bonuses, wages, co-employment, or joint employment." *Id.* The Agreement also provides that:

> The Employee and the Company each specifically acknowledges and agrees that all claims for overtime, unpaid wages, expense reimbursement, wage statements, and claims involving meal and rest breaks shall be subject to arbitration under this Agreement.

*Id.* In addition, the Agreement expressly covers claims asserted under or relating to "Title VII of the Civil Rights Act of 1964 and similar state statutes," "any common law, or statutory law issues

3

relating to discrimination by sex," and "local, or municipal regulations, ordinances, or orders." *Id.* "Covered Parties" is defined to include not only the Company, but "clients of the Company or a company entity, and the former and current officers, directors, managers, employees, owners, attorneys, agents, and vendors of the Company and/or a company entity and/or clients of the Company." *Id*.

The Agreement also includes a class action waiver. *Id.*, p. 2. Under this provision, the Plaintiffs and the DSP Employers agreed that "class action, collective action, or consolidated action procedures are hereby waived and shall not be asserted in arbitration or in court, nor will they apply in any arbitration pursuant to this Agreement." *Id.* It further provides that the parties "shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person." *Id.*

### C. The Plaintiffs Violated their Agreement by Filing This Class Action Lawsuit.

Despite their clear agreement to arbitrate on an individual basis, Plaintiffs filed a putative class action on May 22, 2023, and submitted their Amended Complaint (Dkt. 24) on October 9, 2023. The Amended Complaint alleges class claims for: failure to provide rest periods; wages owed; and disparate impact. Am. Compl., ¶¶ 12-14, 85-126. Plaintiffs' claims arise out of and relates to their employment with their DSP employers and clients, and concern wage and hour issues, which the Agreement expressly covers.

### III. ARGUMENT

#### A. Plaintiffs Agreed to Arbitrate This Dispute.

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). To do so, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Basic

4

contract-law principles require offer, acceptance, and consideration. *See, e.g.*, *Bovino v. Amazon.com, Inc.*, No. 13-cv-2111, 2015 WL 13612169, at *2 (D. Colo. Sept. 15, 2015). All these requirements were met here when Plaintiffs applied to work for the DSPs. *See supra* Section II.B. There is no dispute that the employment-related claims asserted in this litigation fall within the scope of the Agreement's arbitration provision. *Id.*

### B.  The FAA Requires Plaintiffs to Arbitrate Their Claims on an Individual Basis.

#### 1.  The FAA Governs the Agreement.

The Federal Arbitration Act ("FAA") broadly applies to any arbitration agreement that evidences a transaction involving commerce. 9 U.S.C. § 2. Courts construe this standard to encompass the full reach of Congress' commerce power. *Cit. Bank v. Alfabaco, Inc.*, 539 U.S. 52, 56 (2003). The dispute itself need not implicate interstate commerce. *Id.* Rather, the FAA governs any arbitration agreement that affects commerce in any way. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 269 (1995).

The DSPs' business delivering packages for Amazon sufficiently affects interstate commerce for the FAA to apply. *See* Svanstrom Decl., ¶ 2; Baugh Decl., ¶ 2; Ferguson Decl., ¶ 2; Everitt Decl., ¶ 2; Boyd Decl., ¶2; Elliott Decl., ¶ 2. The parties also expressly agreed to the FAA's applicability: "The [FAA] and federal common law applicable to arbitration shall govern the interpretation and enforcement of this Agreement." Cantwell-Badyna Decl., Ex. A, p. 3 [bold omitted]. The Court should therefore find the FAA applies.

#### 2.  The Agreement Is Not Exempt from the FAA.

Amazon anticipates that Plaintiffs will argue that the Agreement is exempt from the FAA under its exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This argument fails. As the parties opposing arbitration, Plaintiffs bear the burden of demonstrating that this exemption

5

applies to them. *Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1257 (D. Colo. 2019) ("the party resisting arbitration bears the burden of proving that Congress intended to preclude arbitration of the claims at issue"). They cannot carry that burden, for two independent reasons: (1) the Agreement is not a "contract of employment" and (2) Plaintiffs do not belong to a "class of workers engaged in foreign or interstate commerce."

### a. The Agreement Is Not a "Contract of Employment."

Section 1 applies only to "contracts of employment." 9 U.S.C. § 1 (emphasis added). So, for the exemption to apply, "the contract in question must be *both* a 'contract of employment' *and* one entered into with a 'worker' of the type described in 9 U.S.C. § 1." *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 596 (4th Cir. 2023). The Supreme Court has clarified that "the term 'contracts of employment' refer[s] to agreements to perform work." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 543-44 (2019). And "an agreement to perform work" means just that: "agreements that require independent contractors [or employees] to perform work." *Id.* at 539. Such a contract "promise[s] work and compensation to an individual employee" and contains "hallmarks" such as "provisions regarding salary, benefits, and leave time." *Amos*, 74 F.4th at 596 (holding that a contract between Amazon Logistics and a particular DSP was not a "contract of employment"). Courts recognize, moreover, that "arbitration agreements . . . do not constitute 'contracts of employment' where the arbitration agreement is 'not contained' in a broader employment agreement between the parties." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 121 (2d Cir. 2010) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)).

Here, the Agreement is not an agreement to perform work. Nor is it contained within any "broader employment agreement." It is a separate, standalone agreement. And the obligation to arbitrate under the Agreement arises before any employment relationship forms and regardless of whether any employment relationship forms. Cantwell-Badyna Decl., Ex. A, p. 1 (covering claims

6

arising from "***application, hiring,*** hours worked, services provided, and/or employment with the Company or the termination thereof" (emphasis added)).  For example, Plaintiff Whinnie entered into a binding arbitration agreement with TenFour Logistics but never ultimately entered into an employment relationship with the DSP.  Calloway Decl., ¶¶ 3, 14; Cantwell-Badyna Decl., ¶ 10.  Because the Agreement is not a "contract of employment" under the Supreme Court's test, the Section 1 exemption is inapplicable.

> b. **Plaintiffs Do Not Belong to a Class of Workers Engaged in Foreign or Interstate Commerce under the FAA**

The second reason the Agreement is not exempt from the FAA is that Plaintiffs do not belong to a "class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  In *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022), the Supreme Court "laid out the proper framework for determining whether a person falls within the transportation-worker exemption," *Lopez v. Cintas Corp.*, 47 F.4th 428, 431 (5th Cir. 2022) (applying *Saxon* to conclude that local delivery drivers are not exempt from the FAA).  This framework prescribes a two-step inquiry: the Court should first define the relevant "class of workers" to which the plaintiffs belong and then determine whether the class of workers is "engaged in foreign or interstate commerce" under the Supreme Court's test.  *Saxon*, 596 U.S. at 455; *accord Lopez*, 47 F.4th at 431.  Under *Saxon*, Plaintiffs belong to the class of local delivery drivers, and that class of workers is not "engaged in foreign or interstate commerce" within the meaning of FAA Section 1.

First, in defining the class of workers, *Saxon* makes clear that courts should focus on the workers' own conduct—not the activities of the businesses for which they work.  The Court explained that the language of Section 1 centers on "workers" and thus on the "actual work" that they perform rather than the broader business activities of the companies for which they perform that work.  *Saxon*, 596 U.S. at 456.  Section 1, in other words, "exempts classes of workers based

on *their* conduct, not their *employer's*." *Id.* (citation omitted).  The *Saxon* plaintiff was thus "a member of a 'class of workers' based on what she does at Southwest [Airlines], not what Southwest does generally." *Id.*  Her typical work activities placed her in "a class of workers who physically load and unload cargo on and off airplanes on a frequent basis." *Id.*

Under this framework, Plaintiffs belong to a class of local delivery drivers.  They make strictly local deliveries, exclusively within the state of Colorado.  Svanstrom Decl., ¶¶ 2-3; Baugh Decl., ¶¶ 2-3; Ferguson Decl., ¶¶ 2-3; Everitt Decl., ¶¶ 2-3; Boyd Decl., ¶¶ 2-3; Elliott Decl., ¶¶ 2-3; *see Lopez*, 47 F.4th at 431-32 (ruling that a self-described "last-mile driver" was in a class of "local delivery drivers" under *Saxon*'s framework).[1]

Second, the class of local delivery drivers to which Plaintiffs belong is not engaged in foreign or interstate commerce under *Saxon*'s test.  That test requires that the class of workers be "directly involved in transporting goods across state or international borders." *Saxon*, 596 U.S. at 457 (emphasis added).  That means that exempt workers "must at least play a direct and necessary role in the free flow of goods across borders" and "be actively engaged in transportation of those goods across borders via the channels of foreign or interstate commerce." *Id.* at 458 (citations and quotation marks omitted).

Unlike the airplane cargo loaders in *Saxon*, Plaintiffs are not "directly involved in transporting goods across state or international borders." *Id.* at 457.  Indeed, the Supreme Court itself "recognize[d]" that local delivery drivers "carr[y] out duties further removed from the channels of interstate commerce or the actual crossing of borders" than airplane cargo loaders. *Id.* at 457 n.2.

---

[1] Even if this Court were to consider the business of Plaintiffs' employers, rather than focus on their own work activities, the result would be the same because the DSPs that employed Plaintiffs perform activities within the state of Colorado.

8

Several recent appellate rulings show how to properly apply *Saxon*'s test to local delivery drivers. For example, in *Lopez*, a "last-mile driver" argued that he was exempt from the FAA because he delivered goods that had arrived at a Houston warehouse from outside Texas, even though his deliveries were all within Texas. 47 F.4th at 430-32. But the Fifth Circuit recognized that this argument was untenable after *Saxon*: "local delivery drivers are not so 'engaged' in 'interstate commerce' as § 1 contemplates." *Id.* at 432. Even though the goods were shipped in from other states, "[o]nce the goods arrived at the Houston warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce" under *Saxon*'s test. *Id.* at 433. Local delivery drivers "do not have such a 'direct and necessary role' in the transportation of goods across borders" and are not "actively engaged in transportation of those goods across borders" because distinct classes of workers perform that cross-border transportation. *Id.*

The Oklahoma Court of Civil Appeals and California trial courts have reached the same result in cases with very similar facts to those here. *See Mathis v. Kerr*, No. 120,246 (Okla. Civ. App. Dec. 16, 2022) (attached as Ex. I); *Ovando v. Paolino*, San Bernardino County Case No. CIVSB2216425 (Cal. Super. Ct. Aug. 17, 2023) (attached as Ex. J); *Henderson v. Amazon.com, Inc.*, Alameda County Case No. 22CV018987 (Cal. Super. Ct. Oct. 4, 2023) (attached as Ex. K). Relying on *Saxon* and *Lopez*, these courts found that local delivery drivers who worked for companies that delivered Amazon packages locally were not exempt from the FAA because they were "only engaged in the local 'last leg' delivery of goods to local customers," and thus were not "'actively' engaged in transportation of those goods across borders via the channels of foreign or interstate commerce." *Mathis*, slip op. at 9; *see also Ovando* ("This court is persuaded more by the *Lopez* line of cases, which seems more in line with *Southwest* than the contrary cases.

9

*Southwest* made clear that 'involving commerce' signals the outer limits of the Commerce clause while 'engaged in commerce' is narrower. The proper inquiry here focuses on whether the worker played a direct and necessary role in transporting goods across state lines."); *Hernderson* (same). In the same vein, another California court recently reached a similar conclusion with respect to an Amazon independent contractor driver who, like Plaintiffs here, made only local deliveries—even though, unlike Plaintiffs here, that driver contracted directly with Amazon. *See Pettie v. Amazon.com, Inc.*, No. CIVDS1908923, 2023 WL 4035015, at *1 (Cal. Super. Ct. May 25, 2023) (granting Amazon's motion to compel arbitration in line with *Saxon*'s and *Lopez*'s guidance to focus on the role of the worker, rather than the business, and finding the FAA exemption inapplicable because the worker was "more of a local delivery person"). And in *Nunes v. LaserShip, Inc.*, the district court similarly cited *Saxon* and *Lopez* in rejecting the claim "that last-mile delivery drivers are engaged in interstate commerce because the goods they transport have traveled interstate and remain in the stream of commerce until delivered." No. 22-cv-2953, 2023 WL 6326615, at *3 (N.D. Ga. Sept. 28, 2023) (emphasis omitted).

Plaintiffs are likely to cite *Brock v. Flowers Food, Inc.*, No. 22-cv-2413, 2023 WL 3481395 (D. Colo. May 16, 2023), *appeal filed*, No. 23-1182 (10th Cir.), but that case is readily distinguishable. The court concluded that the *Brock* plaintiff was directly engaged in interstate commerce in part because he was "actively engaged in the transportation of Flowers' products across state lines into Colorado, by placing orders for products that arrive from out-of-state bakeries and then delivering those products to his Colorado customers." *Id.* at *5. That reasoning is inapplicable here. Plaintiffs have no active engagement in transporting any goods across state lines, whether by ordering those goods from another state or any other activity.

Plaintiffs may also argue that this Court should follow the pre-*Saxon* reasoning of *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021), which held that drivers in the Amazon Flex program were exempt from the FAA because they contracted with Amazon, whose business includes interstate transactions.  The Ninth Circuit has continued to apply *Rittmann* in *Carmona v. Domino's Pizza, LLC*, 73 F.4th 1135, 1137 (9th Cir. 2023), *cert. filed*, No. 23-427 (U.S.), and *Miller v. Amazon.com, Inc.*, No. 21-36048, 2023 WL 5665771, at *1 (9th Cir. Sept. 1, 2023), *cert. filed*, No. 23-424 (U.S.).  These cases, however, determined that under Ninth Circuit rules of stare decisis, they had to continue to adhere to *Rittmann* unless it was "clearly irreconcilable" with *Saxon*.  *Carmona*, 73 F.4th at 1137 (citation omitted); *see also Miller*, 2023 WL 5665771, at *1.  Both decisions, therefore, put a thumb on the scale in favor of retaining *Rittmann* rather than seriously confronting its conflicts with *Saxon*.  *See Carmona*, 73 F.4th at 1138.

There is no question, though, that *Rittmann*'s test does not align with *Saxon*'s.  First, *Rittmann* violates *Saxon* by focusing not on the workers' own actual work, but on the broader business activities of Amazon, the company with which the *Rittmann* plaintiffs contracted. Indeed, the court expressly rejected Amazon's argument that the exemption's application depends on the activities of the relevant workers and not the business.  *Rittmann*, 971 F.3d at 917-18.  Under *Saxon*'s more recent guidance, that was wrong.  The exemption turns on evidence about what the workers "actually" do on a frequent basis, not what the business does.  *Saxon*, 596 U.S. at 455-56; *Lopez*, 47 F.4th at 431.  Second, *Rittmann* violates *Saxon* by holding that delivery drivers need *not* be directly and actively involved in transportation across borders: it is enough to carry "goods that remain in the stream of interstate commerce until they are delivered."  *Id.* at 915.  The Supreme Court did not adopt so expansive a test.  It explicitly required the workers' direct and active

11

involvement in the goods' transit across borders. In fact, all three of *Saxon*'s formulations of its test used the phrase "across borders" or equivalent language. *Saxon*, 596 U.S. at 457-58. *Rittmann*, and other pre-*Saxon* authority that applied a more expansive test, cannot support Plaintiffs given the Supreme Court's intervening directions.

### C. Colorado Law Also Requires Plaintiffs to Arbitrate Their Claims on an Individual Basis.

In all events, even if the Agreement were exempt from the FAA, Plaintiffs still would have to arbitrate their claims under state law. The Agreement provides that if "for any reason, the FAA or federal common law is found not to apply . . . then applicable state law shall govern." Cantwell-Badyna Decl., Ex. A at 2. Here, where Plaintiffs contracted in Colorado to perform delivery services in Colorado, the applicable state law would be Colorado law. And it requires Plaintiffs to arbitrate their claims.

Like the FAA, the Colorado Uniform Arbitration Act provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract." Colo. Rev. Stat. Ann. § 13-22-206. Like federal law, Colorado law features a strong public policy favoring arbitration. *See Lane v. Urgitus*, 145 P.3d 672, 678 (Colo. 2006); *J.A. Walker Co. v. Cambria Corp.*, 159 P.3d 126, 128 (Colo. 2007); *Tug Hill Marcellus LLC v. BKV Chelsea LLC*, 486 P.3d 461, 463 (Colo. App. 2021).

Because the Colorado Uniform Arbitration Act has no exemption for transportation workers, this Court need not even decide whether the Agreement is exempt from the FAA. *See, e.g.*, *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 291 (3d Cir. 2021) (holding that courts should bypass difficult questions about the FAA exemption if it is possible to compel arbitration under state law). Federal courts across the country routinely enforce arbitration agreements under

applicable state law even when those agreements are, or might be, exempt from the FAA under 9 U.S.C. § 1. *See, e.g.*, *Morales v. Activ Enterprises, LLC*, Case 2:23-cv-05943-DSF-SK, Dkt. No. 25 (C.D. Cal. Nov. 6, 2023) (compelling DSP employee who performed Amazon deliveries to arbitrate under California law without first determining whether the driver was exempt from the FAA under *Saxon*) (attached as Ex. L); *Melikyan v. Amazon.com, Inc.*, No. 21-cv-8715, 2023 WL 4505065, at *1 (C.D. Cal. July 5, 2023) (compelling Amazon Flex driver to arbitrate under Delaware law without first determining whether the driver was exempt from the FAA under *Saxon*); *Saxon v. Sw. Airlines Co.*, No. 19-cv-403, 2023 WL 2456382, at *4 (N.D. Ill. Mar. 10, 2023) (compelling the *Saxon* plaintiff to arbitrate under Illinois law); *Harper v. Amazon.com Servs. Inc.*, No. 19-cv-21735, 2022 WL 17751465, at *9 (D.N.J. Dec. 19, 2022) (compelling Amazon Flex driver to arbitrate under either Washington and New Jersey law); *Espinosa v. SNAP Logistics Corp.*, No. 17-cv-6383, 2018 WL 9563311, at *5 (S.D.N.Y. Apr. 3, 2018) ("[E]ven if Plaintiff is exempt from the FAA, the application of the exemption does not preclude enforcement of the arbitration provision under New York state law.").

Here, there is no reason not to do likewise. Regardless of whether the Agreement is exempt from the FAA, Plaintiffs must arbitrate under Colorado state law. The Court can properly grant this Motion without even addressing the FAA.

### D. Amazon Is Entitled to Enforce the Arbitration Agreements.

Finally, although Amazon did not sign the Agreement, it is entitled to enforce Plaintiffs' agreements to arbitrate on two grounds: (1) Amazon is a third-party beneficiary of the Agreement; and (2) Plaintiffs seek to hold Amazon liable for the DSPs' employment actions under a theory of agency.

First, non-signatories can enforce arbitration agreements when they are third-party beneficiaries of the agreement. *N.A. Rugby Union LLC v. United States of Am. Rugby Football*

13

*Union*, 2019 CO 56, ¶ 21, 442 P.3d 859, 863 (adopting third-party-beneficiary exception to the rule only signatories can enforce arbitration agreement). "The critical fact that determines whether a nonsignatory is a third-party beneficiary is whether the underlying agreement manifests an intent to confer specific legal rights upon the nonsignatory." *Id.* at 865-66 (internal citations and quotations omitted). Courts routinely have held that Amazon is entitled to enforce the arbitration agreement between a delivery service provider and its employee. *See, e.g.*, *Hernandez v. Amazon.com Servs., LLC*, Orange County Case No. 30-2021-01192697-CU-OE-CXC (Cal. Sup. Ct. Oct. 1, 2021), Dkt. 70 (order that plaintiff must arbitrate claims against DSP and Amazon where Amazon joined DSP's motion to compel arbitration) (attached as Ex. M).

Here, the contracting parties showed an intent for their arbitration agreements to benefit Amazon and other clients of the DSP employers. Plaintiffs agreed to arbitrate "any Covered Claim," which the Agreement defines as "all past, current, and future grievances, disputes, claims, issues, or causes of action … arising out of or relating to … a [Delivery Service Provider's] relationship with or to a customer, vendor, or third party, including without limitation claims [Plaintiffs] may have against the Company and/or any Covered Parties … ." *See* Cantwell-Badyna Decl., Ex. A, p. 1. Plaintiffs' claims against Amazon qualify as Covered Claims because they arise out of and relate to the relationship between the DSP employers and Amazon. *See* Am. Compl., ¶¶ 4, 26-27. In addition, Amazon fits within the definition of "Covered Parties" under each Plaintiffs' arbitration agreement because that definition expressly includes the "clients" of each DSP Employer with whom Plaintiffs entered into such an agreement. Cantwell-Badyna Decl., Ex. A, p. 2. By Plaintiffs' own allegations and the uncontested facts, Amazon is a Covered Party and thus a third-party beneficiary of the Agreements. Moreover, under the Agreement's express terms, it does not matter that Plaintiffs have not chosen to join the DSPs to this litigation. *Id.*, Ex. A, p.

14

1 ("any claims brought by the Employee against any of the Covered Parties, whether brought jointly or severally with claims against the [DSP], shall be subject to arbitration under this Agreement").

Second, Amazon can enforce the Agreements under agency principles because Plaintiffs allege that the DSP employers are Amazon's agents. Am. Compl., ¶ 27 ("DSPs effectively serve as Amazon's agents to facilitate deliveries"); *see also id.* (alleging "Amazon's control over nearly every aspect of [the DSPs'] business"). "The agency exception to the general principle that a party cannot be required to arbitrate any dispute that it has not agreed to arbitrate is premised on traditional principles of agency law" and provides that an "agent may bind a principal to a contract." *N.A. Rugby Union*, 442 P.3d at 866. Because Plaintiffs have alleged an agency relationship between Amazon and the DSP employers, Amazon may enforce the agreements under the alleged agency relationship. *See, e.g*, *Loyola v. Am. Credit Acceptance LLC*, No. 19-cv-2, 2019 WL 1601362, at *8 (E.D. Wash. Apr. 15, 2019) (recognizing that it is appropriate to compel arbitration under agency and related principles when the claims against the signatory and nonsignatory are "inherently inseparable"). For this reason, too, Amazon is entitled to enforce the Agreement.

### E. The Court Should Dismiss or Stay Plaintiffs' Claims Pending Arbitration.

The FAA's strong pro-arbitration policy requires courts to rigorously enforce FAA-governed arbitration agreements according to their terms, including by compelling arbitration and dismissing (or staying) litigation. 9 U.S.C. §§ 3-4; *see Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). As Plaintiffs must arbitrate their claims, the class claims should also be dismissed. *See Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011) ("Prior to class

15

certification, the named Plaintiffs' failure to maintain a live case or controversy is fatal to the case as a whole[.]").

At minimum, Plaintiffs' class claims must be stayed pending arbitration. Both the FAA and the Colorado Uniform Arbitration Act provide for a mandatory stay to continue until arbitration concludes. 9 U.S.C. § 3; Colo. Rev. Stat. Ann. § 13-22-207. If this Court declines to dismiss the action or class claims, state and federal law firmly establishes Plaintiffs' individual claims must be ordered to arbitration and the remaining claims stayed pending the outcome of arbitration.

### IV.    CONCLUSION

For all these reasons, this Court should compel Plaintiffs' claims to arbitration on an individual basis, dismiss their class claims, and dismiss this action.

Dated:  November 6, 2023

Respectfully submitted,

/s/ Jennifer Harpole
Jennifer Harpole
LITTLER MENDELSON P.C.
1900 Sixteenth Street, Suite 800
Denver, Colorado 80202-5835
Tel. 303.629.6200
Fax 303.484.3926
JHarpole@littler.com

Sari M. Alamuddin
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL  60606
Tel: (312) 324-1158
Fax: (312) 324-1001
sari.alamuddin@morganlewis.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of **Defendants Amazon.Com, Inc. and Amazon Logistics, Inc.'s Motion to Compel Arbitration and Dismiss or Stay Claims Pending Arbitration** was electronically filed with the Clerk of the Court using the Court's CM/ECF electronic filing system this 6th day of November, 2023, which will provide notice of service upon:

David H. Seligman (david@towardsjustice.org)
Valerie L. Collins (valerie@towardsjustice.org)
Alex Hood (alex@towardsjustice.org)
Juno E. Turner (juno@towardsjustice.org)
TOWARDS JUSTICE
303 E. 17th Ave., Suite 400
Denver Co, 80203
Tel: (720) 441-2236

Toby J. Marshall (tmarshall@terrellmarshall.com)
Eric R. Nusser (eric@terrellmarshall.com)
TERRELL MARSHALL LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel: (206) 816-6603

Shelby Leighton (sleighton@publicjustice.net)
PUBLIC JUSTICE
1620 L St. NW, Suite 630
Washington, DC 20036
Tel: (202) 797-8600

David Muraskin (david@farmstand.org)
FARMSTAND
712 H Street NE, Suite 2484
Washington, DC 20002
Tel: (267) 761-8448

*/s/ Patricia Perez*
Patricia Perez