**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

---

LEAH CROSS, MARCO GRANGER-
RIVERA, RYAN SCHILLING and CASSIE
WHINNIE, individually and on behalf of all
others similarly situated,

    *Plaintiffs*,

    *v.*

AMAZON.COM, INC, and AMAZON LO-
GISTICS, INC.,

    *Defendants.*

Civ. Action No.: 23-CV-02099-NYW-SBP

---

**RESPONSE TO MOTION TO COMPEL ARBITRATION [ECF NO. 25]**

---

**INTRODUCTION**

    This case, brought on behalf of thousands of Amazon delivery drivers across Colorado, alleges that Defendants ("Amazon") force delivery drivers to work under brutal work quotas and surveillance systems that deprive them of basic labor rights, including the right to paid ten-minute breaks for every four hours of work. *See generally* First Amended Complaint ("Am. Compl."), ECF No. 24. Consequently, drivers are not even able to access bathrooms while working. Instead, while delivering packages for Amazon, they must "urinate in bottles," "defecate in bags," and otherwise "restrain themselves from using the bathroom at risk of serious health consequences." *Id.* ¶ 1. Rather than defending these claims on the merits, Amazon seeks to compel this case into arbitration based on purported agreements between Plaintiffs and the Delivery Service Partners ("DSPs") that directly employ Amazon's last-mile delivery drivers.

1

*See* Cantwell-Badyna Decl., ECF No. 25-1, ¶¶ 5-10 & Ex. A. (the "arbitration provisions").

Arbitration agreements are frequently enforced to squelch class suits brought by workers alleging systemic violations of their rights. This case is different. *First*, the purported agreements are exempted from the Federal Arbitration Act ("FAA") and the federal policies that sometimes allow the enforcement of arbitration agreements in suits brought by workers alleging violations of labor-standards laws. *Second*, under Colorado law, Plaintiffs' claims are unarbitrable and the arbitration provisions are unenforceable. *Third*, even if the arbitration provisions were in theory enforceable, because Amazon does not have a direct contractual relationship with Plaintiffs and is not a party to the arbitration provisions, it cannot enforce them here.

ARGUMENT

**A.      The Arbitration Provisions are Exempt from the FAA.**

The first question for the Court to resolve[1] is whether the FAA applies to the arbitration provisions. It does not. The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. But the FAA also specifically exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. That exemption applies here.

*1.   The arbitration provisions are contained within "contracts of employment."*

Amazon first argues that the arbitration provisions in this case are not contained in a

---

[1] Whether a dispute falls within an exemption to the FAA is a question for courts to resolve, even if the arbitration provision delegates questions of arbitrability to the arbitrator. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537-38 (2019). Defendants do not appear to dispute that this is an issue for the Court to decide.

2

"contract of employment" because the arbitration provisions, labeled "Mutual Agreement to Individually Arbitrate Disputes," constitute a "separate, standalone" agreement. Motion to Compel Arbitration, ECF No. 25 ("Mot."), at 6-7.

As an initial matter, Amazon does not and cannot dispute that the DSPs entered into "contracts of employment" with Plaintiffs. Whenever an employer agrees with a worker to pay them in exchange for their labor, a contract of employment exists. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) ("At [the time of the FAA's adoption in 1925], a 'contract of employment' usually meant nothing more than an agreement to work."); *see also, e.g.*, *Neims v. Neovia Logistics Distribution, LP*, No. EDCV 23-716 PA, 2023 WL 6369780, at *4 (C.D. Cal. Aug. 10, 2023) (Even in the absence of "a formal written contract . . . governing the employment relationship, there was an agreement between Plaintiff and Defendants exchanging Plaintiff's labor for compensation from Defendants.").

Furthermore, an employer does not insulate an arbitration agreement from Section 1 simply by it in a separate, standalone document, especially when that document is signed during employee onboarding and required as a step in the hiring process, which is the case here. *See e,g.*, Svanstrom Decl., ECF 25-3, ¶ 10 (explaining that a new hire cannot complete the onboarding process and begin working without accepting the arbitration provision). To accept Amazon's argument would allow employers to unilaterally sidestep the exemption under Section 1 of the FAA. *See Abram v. C.R. England, Inc.*, No. CV-20-00764-MWF, 2020 WL 5077365, at *4 (C.D. Cal. Apr. 15, 2020) ("[A]lthough the section one exclusion must be read narrowly, the Court must also not interpret it in a manner that completely eviscerates its purpose.").

Additionally, on their face, the arbitration provisions are clearly part of drivers' broader

"contracts of employment." The very first paragraph of the arbitration provisions discusses the "work environment" and "[d]isputes related to work." *See, e.g.*, Cantwell-Badyna Decl., ECF No. 25-1, Ex. A. The arbitration provisions specifically apply to employment-related disputes. *Id.* And by signing, Plaintiffs and class members "agree[d] and acknowledge[d] that [their] acceptance of or continuing employment with the Company provides further evidence of [their] agreement to accept and be bound by the terms of this Agreement." *Id.* Indeed, prospective employees could not start working until they agreed to the arbitration provisions, making the arbitration provisions a mandatory term or condition of Plaintiffs' and class members' employment. *See, e.g.*, Calloway Decl., ECF No. 25-2, at 1-2, ¶¶ 4-6, 9, ¶ 15. The fact that Amazon seemingly instructed DSPs to present the arbitration provisions as a separate item in the list of employment onboarding tasks does not change this analysis.

Not surprisingly, every court to consider a similar factual scenario has rejected arguments like Amazon's. *See, e.g.*, *Gabay v. Roadway Movers, Inc.*, No. 1:22-cv-06901, 2023 WL 3144310, at *6-7 (S.D.N.Y. Apr. 28, 2023); *Abram*, 2020 WL 5077365, at *3; *Fuqua v. Kenan Advantage Grp., Inc.*, No. 3:11-CV-01463-ST, 2012 WL 2861613, at *5 (D. Or. Apr. 13, 2012); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in Gulf of Mexico, on April 20, 2010*, 2010 WL 4365478, at *4 (E.D. La. Oct. 25, 2010) ("When a potential employee is compelled to sign an arbitration agreement as a condition of employment . . . , it is difficult to see how this mandatory agreement . . . does not constitute a contract of employment."); *Shanks v. Swift Transp. Co. Inc.*, No. L-07-55, 2008 WL 2513056, at *3 (S.D. Tex. June 19, 2008).[2]

---

[2] Even *Henderson*, upon which Amazon relies to argue that Plaintiffs are not "engaged in interstate commerce," held that the arbitration agreements there were contained in "contract of

These cases also explain why *Gilmer* and *Harrington*, on which Amazon relies, are readily distinguishable. The arbitration agreement in *Gilmer* was contained in "a completely separate contract with a separate entity," not a contract with the plaintiff's employer. *Abram*, 2020 WL 5077365, at *3 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n.2 (1991)); *see also In re Oil Spill*, 2010 WL 4365478, at *2 (arbitration agreement in *Gilmer* was contained in "an agreement between the employee and a third party"). And in *Harrington*, the worker signed an arbitration agreement with his employer not at the time he began his employment, nor as a condition of continued employment, but only *after* he sustained a work-related injury and stopped working, and only in exchange for a cash advance from his employer on his injury-related claims. *Harrington v. Atlantic Sounding Co.*, 602 F.3d 113, 115 (2d Cir. 2010). In other words, in *Harrington*, the worker agreed to arbitration in exchange for cash payments, not the establishment or continuance of an employment relationship, which had already ended. Here, by contrast, the arbitration provisions are part of the *employment* relationship with the DSPs: Plaintiffs were offered employment only if they agreed to arbitration during the onboarding process. *See Abram*, 2020 WL 5077365, at *3 (distinguishing *Harrington* and holding that arbitration agreement was "contract of employment" because worker signed arbitration agreement "prior to her hiring").

*Amos v. Amazon Logistics, Inc.*, 74 F.4th 591 (4th Cir. 2023), on which Amazon relies, is not to the contrary and in fact supports Plaintiffs' here. That case involved an arbitration agreement that was contained in contracts between Amazon and its DSPs, not in agreements

---

employment" and that "[t]he defendant may not separate an employment contract into separate documents and then claim that each separate contract is not part of the collective whole." ECF No. 25-11, Ex. K. Although that was based on California law, it supports Plaintiffs' argument.

between DSPs and drivers. The Fourth Circuit concluded that the contract between DSPs and Amazon was not a contract of employment, but also observed that "[d]oubtlessly," section 1 "would include the employment agreements between [the DSP]. . . and its roughly 450 delivery drivers, i.e., *workers* performing *work*." *Id.* (emphasis in original).

       2.  *Plaintiffs are part of a "class of workers engaged in . . . interstate commerce."*

For several years and across the country, Amazon has fought tooth and nail against the argument that its last-mile delivery drivers are "engaged in interstate commerce" and thus exempt from the FAA. It has consistently lost that fight. *See, e.g., Miller v. Amazon.com, Inc.*, No. 21-36048, 2023 WL 5665771, at *1 (9th Cir. Sept. 1, 2023); *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915-19 (9th Cir. 2020); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 17-26 (1st Cir. 2020). And while there could have been some doubt about the status of this case law when the Supreme Court was considering *Southwest Airlines Co. v. Saxon* in 2022, there is not anymore. The Supreme Court expressly rejected Southwest's argument that that "only workers who physically move goods or people across foreign or international boundaries—pilots, ship crews, locomotive engineers, and the like—are 'engaged in foreign or interstate commerce.'" 596 U.S. 450, 461 (2022).

Instead, the key question as articulated by the Supreme Court in *Saxon* is whether the "class of workers" at issue is involved in "activities within the flow of commerce," such as "when they handle goods traveling in interstate and foreign commerce." *Id.* at 463 (quoting *Balt. & Ohio Sw. R.R. Co. v. Burtsch*, 263 U.S. 540, 544 (1924)). The workers in *Saxon* did not themselves physically transport goods across state lines; they loaded cargo on and off airplanes. But the cargo they handled traveled in the stream of interstate commerce, and that was enough

for them to be exempt from the FAA. *Id.* In this case, just as in *Saxon*, Plaintiffs handled goods while they traveled in the "flow of interstate commerce": they picked up packages that had traveled across state lines and delivered them to their final destinations. Am. Compl. ¶ 39. For this reason, Plaintiffs' claims are likewise exempt from the FAA.

This analysis is consistent with the prior court of appeals decisions addressing Amazon last-mile delivery drivers. For example, in *Rittmann*, the Ninth Circuit concluded that, because "the Amazon packages [drivers] carry are goods that remain in the stream of commerce until they are delivered," Amazon's last-mile delivery drivers are "transportation workers engaged in the movement of interstate commerce and exempt from the FAA's application." 971 F.3d at 915. The Ninth Circuit has specifically concluded that its reasoning in *Rittman* survives *Saxon*, including holding both that Amazon drivers specifically, and last-mile delivery drivers generally, are exempt from the FAA. *See Miller*, 2023 WL 5665771, at *1; *Carmona v. Domino's Pizza, LLC*, 73 F. 4th 1135, 1137 (9th Cir. 2023). Likewise, in *Waithaka*, the First Circuit "reject[ed] Amazon's cramped construction of Section 1's exemption for transportation workers" and held that Amazon drivers "who haul goods on the final legs of interstate journeys are transportation workers 'engaged in . . . interstate commerce,' regardless of whether the workers themselves physically cross state lines." 966 F.3d at 26. And it has confirmed that this holding survives *Saxon* because Amazon last-mile delivery drivers are a "constituent part" of the movement of goods across state lines. *See Immediato v. Postmates, Inc.*, 54 F.4th 67, 77 (1st Cir. 2022).

The analysis by the Ninth and First Circuits is consistent with case law in this District, where two courts—one before *Saxon* and one after—have concluded that last-mile delivery drivers fall within the Section 1 exemption. In *Ward v. Express Messenger Systems, Inc.*, this

Court denied a motion to compel arbitration, even though the plaintiffs "made only *intrastate* deliveries in Colorado," because the plaintiffs were "directly responsible for transporting goods in interstate commerce" by "handl[ing] goods that travel[ed] through interstate commerce." 413 F. Supp. 3d 1079, 1085-87 (D. Colo. 2019) (Wang, J.). And in *Brock v. Flowers Food, Inc.*, decided after *Saxon*, the court adopted the "thorough analysis" of cases like *Rittman* and *Waithaka* to hold that a driver who "orders . . . products from bakeries across state borders, signs off on them at his warehouse, loads them onto his trucks, and delivers them" was "engaged in interstate commerce" within the meaning of Section 1. --- F. Supp. 3d ----, No. 1:22-cv-02413-CNS-MEH, 2023 WL 3481395, at *6 (D. Colo. May 16, 2023).

Amazon relies on non-binding and inapposite cases to support its narrow reading of *Saxon*. *See* Mot. at 9-10. In *Lopez v. Cintas Corp.*, the Fifth Circuit concluded that the plaintiff was not exempt from the FAA because he "belongs to a class of workers that picks up items from a local warehouse and delivers those items to local customers, with an emphasis on sales and customer service." 47 F.4th 428, 432 (5th Cir. 2022). The Fifth Circuit contrived support for this framework based on a purported circuit split between *Rittmann* and *Waithaka*, on the one hand, and *Wallace v. GrubHub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020), on the other. But, in reality, those cases involve distinctive facts and are entirely consistent with each other and with *Saxon*. *See Singh v. Uber Techs., Inc.*, 67 F.4th 550, 558-59 (4th Cir. 2023) (explaining that "[o]n one side of the line are those whose work occurs within the flow of interstate commerce" and citing *Waithaka* and *Rittman*, and "[o]n the other side of the line are workers who engage in primarily local economic activity with only tangential interstate connections," and citing *Wallace*). In *Wallace*, the Seventh Circuit concluded that Grubhub drivers who deliver food

prepared by local restaurants to local consumers are not exempt from the FAA. 970 F.3d at 802-03. While it is true that ingredients for food prepared by restaurants sometimes cross state lines, the delivery of the prepared food to consumers is, in the First Circuit's words, part of an "independent and contingent *intra*state transaction." *Immediato*, 54 F.4th at 77 (internal quotation marks omitted) (emphasis added). In contrast, unlike the local food delivery drivers in *Wallace*, but like the Amazon last-mile delivery drivers in *Rittman* and *Waithaka* and the Southwest employees in *Saxon*, Plaintiffs here are part of a class of workers whose work is a "constituent part" of a single transaction involving the flow of goods in interstate commerce. *Id.*; *see Singh*, 67 F.4th at 558-59 (food delivery drivers "can be distinguished from Amazon delivery drivers" because they "deliver food only after it has left the stream of interstate commerce").

In *Mathis v. Kerr*, also relied on by Amazon, the Oklahoma Court of Appeals simply held that "we cannot find Plaintiffs played a direct and necessary role in the free flow of goods across borders" because "Plaintiffs are only engaged in the local last leg delivery of goods to consumers." ECF No. 25-9 at 9, ¶ 17. But that conclusion runs contrary to *Saxon*, and as explained in the dissent, ignores the role of the plaintiffs in completing the chain of the interstate delivery process. *Id.* at 15, ¶ 6 (dissent). The unpublished California superior court decisions Amazon cites are similarly short on analysis and incorrect on the law. *See* Mot. at 10.

Finally, to the extent that these authorities do not answer questions regarding what it means to be "engaged in interstate commerce," this Court must interpret that language in accordance with the ordinary meaning of those words in 1925, when the FAA was passed. *See New Prime Inc.*, 139 S. Ct. at 539. Sources from the time of the FAA's passage make clear that Plaintiffs and other last-mile delivery drivers here are "engaged in interstate commerce." *See,*

*e.g.*, Bouvier's Law Dictionary and Concise Encyclopedia 532 (8th ed. 1914) (explaining that a good was understood to be in interstate commerce from the time it was "actually shipped or started in the course of transportation to another state or foreign country" all the way until it reached its final destination—even if the final leg of that journey was entirely within a single state—and therefore "an express company taking goods from a steamer or railroad and transporting them through the street of the city to the consignee is still engaged in interstate commerce"); *Phila. & R.R. Co. v. Hancock*, 253 U.S. 284, 285 (1920) (finding worker who was "operating a train of loaded cars" that carried coal from a coal mine to a railroad storage yard "two miles away" entirely within Pennsylvania was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act).

## B.        The Arbitration Provisions are Unenforceable Under Colorado Law.

Because the FAA does not apply to the arbitration provisions at issue here, the Court must decide whether—independent of the FAA and U.S. Supreme Court case law interpreting it—the arbitration provisions are enforceable as a matter of Colorado law. They are not.

### 1.   Claims for unpaid wages are not arbitrable as a matter of Colorado law.

Amazon ignores that claims for unpaid wages under the Colorado Wage Act—the foundation for Plaintiffs' wage-and-hour claims—are not arbitrable. As the Colorado Supreme Court has explained, the "Colorado Wage Claim Act prohibit[s] employers from requiring employees to submit disputes over compensation to arbitration." *Lambdin v. Dist. Ct.*, 903 P.2d 1126, 1131 (Colo. 1995); *see also Cagle v. Mathers Fam. Tr.*, 295 P.3d 460, 470 (Colo. 2013). To be sure, when the FAA applies to the dispute at issue, it likely preempts *Lambdin*'s non-waiver rule. *See Grohn v. Sisters of Charity Health Servs. Colorado*, 960 P.2d 722, 727 (Colo.

App. 1998). But when, as here, the FAA does not apply, *Lambdin* is binding.

The Colorado Supreme Court has not had occasion to decide whether Colorado Anti-Discrimination Act (CADA) claims or claims under the Denver Wage Theft Ordinance are similarly exempt from arbitration. But based on relevant statutory language, these claims should likewise not be subject to arbitration. CADA provides workers the right "to file a civil action in a district court in this state based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the commission." C.R.S. § 24-34-306. And the Denver Wage Theft Ordinance provides workers with the right to bring a "civil action in a court of competent jurisdiction." Den. Mun. Code 58-6. Colorado courts have held that similar language prohibits enforcement of contracts that waive the right to file "civil actions in Colorado courts." *Morris v. Towers Fin. Corp.*, 916 P.2d 678, 679 (Colo. App. 1996). Thus, Colorado courts are likely to hold that Amazon cannot force Plaintiffs to arbitrate claims under CADA and the Denver Wage Theft Ordinance.[3]

2. *Alternatively, class action waivers are unenforceable as a matter of Colorado law.*

Alternatively, even if the Court concludes that Plaintiffs' claims are arbitrable as a matter of Colorado law, the arbitration provisions at issue here are unenforceable because they require Plaintiffs to waive their right to participate in class actions. While class action waivers within arbitration provisions are enforceable as a matter of federal law under the FAA, *see, e.g.*, *AT&T v. Concepcion*, 563 US 333, 352 (2011), the FAA has no application here. *Supra* Part A. Although the Colorado Supreme Court has not had occasion to decide whether class action

---

[3] The Court need not decide whether Plaintiffs' CADA claims are arbitrable because Plaintiffs' have not yet pled those claims, which are still being exhausted.

waivers are enforceable as a matter of state law, the court would likely rule they are not.

Before *Concepcion*, courts around the country reasoned that, as a matter of state law, class action waivers are unenforceable.[4] And after *Concepcion*, courts have continued to hold that class action waivers are unenforceable under state law when the FAA does not apply. *See, e.g.*, *Pace v. Hamilton* Cove, 295 A.3d 1251, 1258 (N.J. App. Div. 2023); *T.S. Kao, Inc. v. N. Am. Bancard, LLC*, No. 1:16-CV-4219-SCJ, 2017 WL 8682258, at *3 (N.D. Ga. Dec. 15, 2017).

These decisions are based on the important public policies underlying the class action device, especially in cases involving workers or consumers. As the Massachusetts Supreme Judicial Court has explained, class action waivers conflict with at least three important public policies underlying the class action device: (1) the efficiencies of allowing a multitude of small claims to advance in a single proceeding; (2) the deterrence effect of the threat of class litigation on behalf of large groups of who may be unlikely to all pursue individual claims; and (3) the ability of absent class members, who may be too fearful or not have the resources to come forward on their own, to recover damages through litigation pursued by a class representative. *See Feeney v. Dell Inc.*, 908 N.E.2d 753, 763 (Mass. 2009).

Those same considerations apply with equal force here. Colorado courts have explained that class actions are critical to the pursuit of justice and the efficient administration and

---

[4]  This includes courts applying the law in Alabama, Arizona, California, Florida, Georgia, Illinois, Kentucky, Massachusetts, Michigan, Missouri, New Jersey, New Mexico, Ohio, Oregon, Pennsylvania, Washington, West Virginia, and Wisconsin. *See, e.g., Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010); *Jones v. DirecTV, Inc.*, 381 F. App'x 895 (11th Cir. 2010); *Chalk v. T- Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2009); *Lowden v. T-Mobile, USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008); *Davis v. Chase Bank USA*, 299 F. App'x 662 (9th Cir. 2008); *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49 (1st Cir. 2007); *Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007); *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007).

enforcement of the law. They provide a vehicle for plaintiffs with small claims and little power to nevertheless access judicial relief for themselves and for others who may be too fearful to come forward. *See Jackson v. Unocal Corp.*, 262 P.3d 874, 880 (Colo. 2011) (class actions allow parties to aggregate "relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor" (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997))). And they ensure that the law is adequately enforced and that the courts are not overburdened with a multiplicity of individual suits alleging common issues. *Id.* Given these important purposes of the class action device, Colorado has a "policy of favoring the maintenance of class actions." *Id.* (internal quotation marks omitted).

It is therefore likely that Colorado courts would conclude that class action waivers are unenforceable and against public policy. *See Rademacher v. Becker*, 374 P.3d 499, 500 (Colo. App. 2015) ("Colorado courts will not enforce a contract that violates public policy."). To the extent that the Court decides to address the issue but has doubts that the Colorado Supreme Court would resolve it consistently with Plaintiffs' argument here, the Court should certify the issue to the Colorado Supreme Court. *See* Colo. R. App. P. 21.1(a).

**C.    As a Non-Signatory, Amazon Cannot Enforce the Arbitration Provisions.**

Even if the Court concludes that the FAA applies or that Plaintiffs' claims are arbitrable and the arbitration provisions are in theory enforceable under Colorado law, the Court should still deny Amazon's motion to compel arbitration because Amazon does not have the contractual authority to compel arbitration.

Amazon seeks to compel arbitration based solely on arbitration provisions between Plaintiffs and their direct employer DSPs, not Amazon. In general, "when a requirement to

arbitrate is created by an agreement, it can only be invoked by and enforced against a signatory to that agreement." *N.A. Rugby Union LLC v. USA Rugby Football Union*, 442 P.3d 859, 867 (Colo. 2019). That is because "[i]t is well-settled that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* at 863 (internal quotation marks omitted).

Because Amazon is not a signatory, it must prove that it falls within one of the narrow exceptions to that rule. General principles of state law—not any arbitration-specific doctrine— determine whether a non-signatory can enforce an arbitration agreement, and the purported "policy favoring arbitration" does not come into play. *See Santich v. VCG Holding Corp.,* 443 P.3d 62, 65-66 (Colo. 2019). In *Santich*, on a certified question from a court in this District, the Colorado Supreme Court concluded that courts had improperly expanded the state-law doctrine of "equitable estoppel," which had become a doctrine frequently relied upon by non-signatories seeking to compel claims into arbitration. *See id.* at 65-66. Not surprisingly, following *Santich*, Amazon does not rely on equitable estoppel in its motion to compel. Rather, it invokes two even less likely sources for its authority to enforce the arbitration provisions as a non-signatory: (1) the third-party beneficiary doctrine, and (2) agency law. Amazon fails to meet its burden of satisfying the requirements for either one.

*1. Amazon cannot enforce the arbitration provisions as a third-party beneficiary.*

Amazon argues that it can enforce the arbitration provisions between each Plaintiff and their employer DSP as a third-party beneficiary. It asserts that "courts routinely have held that Amazon is entitled to enforce the arbitration agreement between a delivery service provider and its employee." Mot. at 14. But in support, it cites just one unpublished California superior court

case that addressed Amazon's third-party beneficiary status in a conclusory sentence without analysis. *See* ECF No. 25-13, at 7.

Under Colorado law, "[a] third-party beneficiary may enforce a contract only if the parties to that contract intended to confer a benefit on the third party when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party." *Schneider v. SRC Energy, Inc*., 424 F. Supp. 3d 1094, 1100 (D. Colo. 2019) (internal quotation marks, citation omitted). The most obvious evidence of intent to benefit a third party is an agreement expressly mentioning that third party. Indeed, "a nonparty generally cannot enforce contract provisions, or be bound by them, where the provisions do not specifically address the nonparty." *Chandler-McPhail v. Duffey*, 194 P.3d 434, 438 (Colo. App. 2008). Here, the arbitration provisions do not mention Amazon anywhere, despite being a form contract provided by Amazon for use in a registration process required by Amazon. *See* ECF No. 25-1, Ex. A.

That intentional omission of any mention of Amazon—despite its involvement in the registration process and substantial control over many aspects of the DSP-driver employment relationship—is evidence that the parties to the arbitration provisions did not intend to confer on Amazon the ability to enforce the agreement. *See, e.g.*, *Winter Park Real Estate Invests., Inc. v. Anderson*, 160 P.3d 399, 406 (Colo. Ct. App. 2007) (that non-party's name was not mentioned in contract was evidence that parties did not intend to benefit non-party); *Everett v. Dickinson & Co*., 929 P.2d 10, 14 (Colo. Ct. App. 1996) (assuming that omission of nonparty from agreement was "purposeful" and concluding that court could "reasonably infer that the parties did not intend that the [omitted nonparty] be a beneficiary of the arbitration clause").

Despite this omission, Amazon counters that it can enforce the agreement because

Plaintiffs agreed to arbitrate any claims against "Covered Parties," and, according to Amazon, it meets the agreement's definition of a "Covered Party," which includes "clients" of the DSP. See ECF No. 25-1. But Amazon's one-sentence conclusory assertion that it is a client is insufficient to meet its burden to prove that the parties intended to confer on it the right to enforce the arbitration provisions. *See Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 699 (10th Cir. 2012); *see also San Juan Constr., Inc. v. W.R., Berkley Syndicate Mgmt. Ltd*., 2022 WL 1451914, at *3 (D. Colo. May 9, 2022). In *Patton*, the Tenth Circuit rejected a non-signatory's conclusory argument that it could enforce the arbitration agreement as a third-party beneficiary because the agreement covered claims against "affiliates" and, the non-signatory asserted, it was an "affiliate." 504 F. App'x at 699. Here, like the non-signatory in *Patton*, Amazon has failed to "meet [its] burden of showing . . . . what the term ['clients'] means in the arbitration agreement and how their relationship with [the DSPs] meets that definition." *See id.* That failure alone dooms its motion to compel arbitration as a third-party beneficiary.

Even had it tried, it is far from evident that Amazon would be able to show that its relationship with the DSPs meets the definition of a "client," which the provisions do not define. Black's Law Dictionary defines "client" as a "person or entity that employs a professional for advice or help in that professional's line of work." Black's Law Dictionary (11th ed. 2019). In other words, "client" generally refers to someone who hires an independent professional to provide expertise that the professional also offers to other clients in their "line of work." The term certainly does not unambiguously refer to the unique relationship between Amazon and the DSPs. Unlike the typical professional who offers their services to many clients, DSPs are entities created at the behest of Amazon for the sole purpose of hiring drivers to deliver packages for

Amazon. Indeed, DSPs are not "professionals" at all, as they are not required to have particular expertise or experience. Instead, Amazon trains the DSPs by sharing its own logistics expertise. And although it is not unusual for a client to dictate the overall parameters of the work done by a professional, Amazon's control of the DSP's work goes far beyond that to dictating everything from how DSPs structure their day to the exact routes drivers must follow to deliver packages.[5]

Moreover, to the extent it is ambiguous whether Amazon is included in the definition of "client," the arbitration provisions should be construed against Amazon. *See U.S. Fidelity & Guaran. Co. v. Budget Rent-A-Car Systems, Inc.*, 842 P.2d 208, 211 (Colo. 1992) (en banc). That is particularly so here where Amazon, as the drafter of the contract, could have expressly named itself as a third-party beneficiary or, at the very least, clearly defined "client." It did neither, instead intentionally including a vague definition of "Covered Party" that obscured from the actual parties to the contract Amazon's intention to assert third-party beneficiary status. That was likely by design. Amazon strives to create contractual distance between itself and its delivery drivers to avoid liability for labor standards violations.[6] Identifying itself in contracts between the DSPs and drivers may increase the risk, in Amazon's eyes, that Amazon will be found to be responsible for the conditions of those drivers' employment. But arbitration is a matter of contract, and it would be inequitable and inconsistent with the third-party beneficiary doctrine to allow Amazon to create contractual distance between itself and Plaintiffs and then benefit from contracts between Plaintiffs and DSPs that do not even identify Amazon.

---

[5] *See* Am. Compl. ¶¶ 16-37; *see also* Lauren Rosenblatt, *Delivery company files class action on behalf of 2,500 Amazon branded delivery partners*, Seattle Times (Apr. 8, 2022), https://tinyurl.com/4tsbzev5.

[6] *See, e.g.*, Jules Roscoe, *Amazon Delivery Drivers Unionized. Now They Have to Prove They Work For Amazon*, VICE (May 12, 2023), https://tinyurl.com/mbcuwyy3.

*2. Amazon cannot enforce the agreement based on agency principles.*

Amazon also contends that, as a non-signatory, it can enforce the arbitration agreements "under agency principles because Plaintiffs allege that the DSP employers are Amazon's agents." Mot. at 15. To begin, Plaintiffs have not alleged that the DSPs *are* Amazon's agents. Instead, they have alleged that Amazon exerts a degree of control over DSPs' package delivery business and employees that is *akin to* the degree of control in an agency relationship. And Plaintiffs certainly have not alleged that the DSPs act as Amazon's agents in all circumstances, or that the DSPs were acting as Amazon's agents when they agreed to arbitration. Thus, Amazon's reliance on the allegations in the complaint is misplaced, and the question is whether Amazon has met its burden of proving that it can enforce the arbitration provisions under Colorado agency law. It has not. Indeed, Amazon takes care to avoid even suggesting that the DSPs had actual authority to act as its agents in signing the arbitration provisions. And it certainly has not produced evidence of any authority. That is fatal to its argument because, under traditional principles of agency, only an agent with "actual authority" can bind an undisclosed principal to a contract.[7] Restatement (Third) of Agency § 6.03 (2006); *see Fresquez v. Trinidad Inn, Inc.*, 521 P.3d 399, 409 (Colo. Ct. App. 2022) (holding that agent with actual authority to make medical decisions for patient could not bind patient to arbitration agreement without specific actual authority to enter agreement). Because Amazon has not shown that the DSPs had actual authority to enter the agreement on behalf of Amazon, the DSPs could not bind Amazon,

---

[7] Here, the principal was undisclosed because, as described below, the agreement omitted any mention of Amazon and focused on the obligations of the DSPs themselves. *Cf. Rocky Mountain Exploration, Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 232-33 (Colo. 2018) (principal was not undisclosed where agreement explicitly mentioned that agent had "other investors or partners" and referred to "third parties who have agreed to participate in this transaction")

regardless of what Plaintiffs alleged in the complaint.

Moreover, even if the DSPs did have actual authority to act as Amazon's agents—which they did not—an agent can bind an undisclosed principal to an agreement only if they intend to act for the principal when signing the agreement. Restatement (Third) of Agency § 6.03, cmt. c (explaining that "an undisclosed principal does not become a party to a contract when the agent does not intend to act for the principal"). Thus, it is not enough for Amazon to show an agency relationship generally. It must also show that the DSPs intended to act as agents for Amazon when they took the specific action of agreeing to the arbitration provisions. Here, Amazon has submitted no evidence that the DSPs were authorized to or intended to act on Amazon's behalf when they agreed to arbitration. Indeed, the language of the agreements contradicts that position because it is a "Mutual Agreement" between "the Employee and Company" (i.e., the DSP) to arbitrate any disputes between them. By requiring the DSPs to arbitrate any claims they have against the employee and allowing the DSPs to compel arbitration of any claims by the employees against them, the provisions demonstrate that they were intended to apply to the DSPs individually, not as agents for Amazon.

In short, Amazon has "failed to identify the requirements to establish an agency theory, or facts which meet such requirements sufficient to allow the nonsignatory Defendants to compel Plaintiffs to arbitrate." *Santich v. VCG Holding Corp.*, 2020 WL 1529182, at *2 (D. Colo. Mar. 30, 2020)). As a result, Amazon's motion should be denied on this basis too.

    *3.  Alternatively, Plaintiffs are entitled to limited discovery and a trial.*

For the reasons described above, Amazon has not met its burden of producing any facts in support of its third-party beneficiary or agency status. The Court should therefore deny Ama-

zon's motion as a matter of law. But if the Court finds that Amazon has successfully placed its status in dispute, Plaintiffs respectfully request that the Court order discovery and a trial on the limited issue of Amazon's ability to enforce the arbitration provisions, particularly whether Amazon is a "client" of the DSPs and whether the DSPs had actual authority to enter into the agreement on Amazon's behalf, because those are material disputes of fact that warrant discovery and a summary trial under the FAA. *See* 9 U.S.C. § 4; *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) (if there is a "genuine issue of material fact, then a trial on the existence of the arbitration agreement is required").

## CONCLUSION

For the forgoing reasons, Amazon's motion to compel arbitration should be denied.

Respectfully Submitted,

*/s/ David H. Seligman*

David H. Seligman, No. 49394
Valerie L. Collins, No. 57193
Alex Hood, No. 42775
Juno E. Turner
TOWARDS JUSTICE
303 E. 17th Ave. Suite 400
Denver, CO 80203
(720) 441-2236
david@towardsjustice.org
valerie@towardsjustice.org
alex@towardsjustice.org
juno@towardsjustice.org

Toby J. Marshall
Eric R. Nusser
TERRELL MARSHALL LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
(206) 816-6603

tmarshall@terrellmarshall.com
eric@terrellmarshall.com

Shelby Leighton
PUBLIC JUSTICE
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
sleighton@publicjustice.net

Hannah Kieschnick
PUBLIC JUSTICE
475 14th St., Suite 610
Oakland, CA 94612
(510) 622-8150
hkieschnick@publicjustice.net

David Muraskin
FARMSTAND
712 H Street NE, Suite 2534
Washington, DC 20002
(202) 630-3095
david@farmstand.org

*Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

  I hereby certify that on December 4, 2023, I filed the foregoing via CM/ECF, and CM/ECF will generate a Notice of Electronic Filing on all counsel who have entered an appearance in this matter.

            */s/ David H. Seligman*