# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

LEAH CROSS, MARCO GRANGER-RIVERA, RYAN SCHILLING and CASSIE WHINNIE, individually and on behalf of all others similarly situated,

    *Plaintiffs*,

    *v.*

AMAZON.COM, INC, and AMAZON LOGISTICS, INC.,

    *Defendants.*

Civ. Action No.: 23-CV-02099-NYW-SBP

**RESPONSE TO MOTION TO COMPEL ARBITRATION [ECF NO. 25]**

## INTRODUCTION

This case, brought on behalf of thousands of Amazon last-mile delivery drivers across Colorado, alleges that Defendants ("Amazon") force delivery drivers to work under brutal work quotas and surveillance systems that deprive them of basic labor rights, including the right to paid ten-minute breaks for every four hours of work. *See generally* First Amended Complaint ("Am. Compl."), ECF No. 24. Amazon seeks to compel this case into arbitration based on purported agreements between Plaintiffs and the Delivery Service Partners ("DSPs") that directly employ them. *See* Cantwell-Badyna Decl., ECF No. 25-1, ¶¶ 5-10 & Ex. A. (the "arbitration provisions").

The motion should be denied. *First*, the purported agreements are exempted from the Federal Arbitration Act ("FAA") because they are "contracts of employment" of "workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. *Second*, in the absence of the FAA, Plaintiffs' claims are not arbitrable and the arbitration provisions are unenforceable under Colorado law. *Third*, even if the arbitration provisions were in theory enforceable, Amazon is not a party to the arbitration provisions, so it cannot enforce them here.

## ARGUMENT

**A.   The Arbitration Provisions Are Exempt from the FAA.**

Although the FAA generally provides that arbitration agreements must be enforced, it also specifically exempts "contracts of employment of. . . any . . . class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. That exemption applies here, and thus the Court cannot compel arbitration under the FAA.

> 1. *The arbitration provisions are contained within "contracts of employment."*

Amazon first wrongly argues that the arbitration provisions in this case are not contained in a "contract of employment" under 9 U.S.C. § 1 because the arbitration provisions constitute a "separate, standalone" agreement. Motion to Compel Arbitration, ECF No. 25 ("Mot."), at 6-7.

As an initial matter, Amazon does not and cannot dispute that the DSPs entered into "contracts of employment" with Plaintiffs. Whenever an employer agrees with a worker to pay them in exchange for their labor, a contract of employment exists. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019); *see also, e.g.*, *Neims v. Neovia Logistics Distribution, LP*, No. EDCV 23-716 PA, 2023 WL 6369780, at *4 (C.D. Cal. Aug. 10, 2023). Additionally, on their face, the arbitration provisions are clearly part of drivers' broader "contracts of employment." The first paragraph of the arbitration provisions discusses the "work environment" and "[d]isputes related to work," and the provisions specifically apply to employment-related disputes. *See* Cantwell-Badyna Decl., ECF No. 25-1, Ex. A. Indeed, prospective employees could not start working until they agreed to the arbitration provisions, making them a mandatory term or condition of Plaintiffs' and class members' employment. *See, e.g.*, Calloway Decl., ECF No. 25-2, at 1-2, ¶¶ 4-6, 9, ¶ 15. Given that there is a contract of employment, Amazon cannot unilaterally sidestep the Section 1 exemption simply by putting the arbitration provisions in a separate, standalone document, especially where, as here, that document is signed during employee onboarding and required as a step in the hiring process. *See e,g.*, Svanstrom Decl., ECF 25-3, ¶ 10; *see Abram v. C.R. England, Inc.*, No. CV-20-00764-MWF, 2020 WL 5077365, at *4 (C.D. Cal. Apr. 15, 2020) ("[A]lthough the section one exclusion must be read narrowly, the Court must also not interpret it in a manner that completely eviscerates its purpose.").

Not surprisingly, every court to consider a "standalone" arbitration agreement has rejected arguments like Amazon's. *See, e.g.*, *Gabay v. Roadway Movers, Inc*., No. 1:22-cv-06901, 2023 WL 3144310, at *6-7 (S.D.N.Y. Apr. 28, 2023); *Abram*, 2020 WL 5077365, at *3; *Fuqua v. Kenan Advantage Grp., Inc*., No. 3:11-CV-01463-ST, 2012 WL 2861613, at *5 (D. Or. Apr. 13, 2012); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in Gulf of Mexico, on April 20, 2010*, 2010 WL 4365478, at *4 (E.D. La. Oct. 25, 2010); *Shanks v. Swift Transp. Co. Inc.*, No. L-07-55, 2008 WL 2513056, at *3 (S.D. Tex. June 19, 2008).[1]

These cases also explain why *Gilmer* and *Harrington*, on which Amazon relies, are readily distinguishable. The arbitration agreement in *Gilmer* was contained in "a completely separate contract with a separate entity," not a contract with the plaintiff's employer. *Abram*, 2020 WL 5077365, at *3 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n.2 (1991)); *see also In re Oil Spill*, 2010 WL 4365478, at *2. And in *Harrington*, the worker signed an arbitration agreement with his employer only *after* he sustained a work-related injury and stopped working—not when his employment began or as a condition of continued employment—and did so in exchange for a cash advance from his employer. *Harrington v. Atlantic Sounding Co.*, 602 F.3d 113, 115 (2d Cir. 2010). Here, Plaintiffs were offered employment only if they agreed to arbitration during the onboarding process, making arbitration a condition of their employment contract. *See Abram*, 2020 WL 5077365, at *3.

The third case on which Amazon relies, *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591

---

[1] Even *Henderson*, which Amazon relies on to argue that Plaintiffs are not "engaged in interstate commerce," held that the arbitration agreements there were contained in "contract of employment" and that "[t]he defendant may not separate an employment contract into separate documents and then claim that each separate contract is not part of the collective whole." ECF No. 25-11, Ex. K. Although that was based on California law, it supports Plaintiffs' argument.

3

(4th Cir. 2023), in fact supports Plaintiffs' position. That case involved an arbitration agreement that was contained in contracts between Amazon and its DSPs, not between DSPs and drivers, as is the case here. The Fourth Circuit concluded that the contract between DSPs and Amazon was not a contract of employment, but also observed that "[d]oubtlessly," Section 1 "would include the employment agreements between [the DSP]. . . and its roughly 450 delivery drivers, i.e., *workers* performing *work*." *Id.* (emphasis in original).

2. Plaintiffs are part of a "class of workers engaged in . . . interstate commerce."

In 2022, in *Southwest Airlines Co. v. Saxon*, the Supreme Court expressly rejected the proposition that "only workers who physically move goods or people across foreign or international boundaries—pilots, ship crews, locomotive engineers, and the like—are 'engaged in foreign or interstate commerce.'" 596 U.S. 450, 461 (2022). Instead, the key question as articulated by the Supreme Court in *Saxon* is whether the "class of workers" at issue is involved in "activities within the flow of commerce," such as "when they handle goods traveling in interstate and foreign commerce." *Id.* at 463 (quoting *Balt. & Ohio Sw. R.R. Co. v. Burtsch*, 263 U.S. 540, 544 (1924)). The workers in *Saxon* were exempt from the FAA because the cargo they handled traveled in the stream of interstate commerce, even though they did not physically transport the cargo across state lines. *Id.* In this case, just as in *Saxon*, Plaintiffs are exempt from the FAA because they handled goods while they traveled in the "flow of interstate commerce": they picked up packages that had traveled across state lines and delivered them to their final destinations. Am. Compl. ¶ 39. For that reason, Courts of Appeal have consistently held that Amazon's last-mile delivery drivers are exempt from the FAA. *See, e.g.*, *Miller v. Amazon.com, Inc.*, No. 21-36048, 2023 WL 5665771, at *1 (9th Cir. Sept. 1, 2023); *Rittmann v. Amazon.com,*

*Inc.*, 971 F.3d 904, 915-19 (9th Cir. 2020); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 17-26 (1st Cir. 2020). For example, in *Rittmann*, the Ninth Circuit concluded that, because "the Amazon packages [drivers] carry are goods that remain in the stream of commerce until they are delivered," Amazon's last-mile delivery drivers are "transportation workers engaged in the movement of interstate commerce and exempt from the FAA's application." 971 F.3d at 915. And the Ninth and First Circuits have specifically concluded that their reasoning in *Waithaka* and *Rittman* survives *Saxon*. *See Miller*, 2023 WL 5665771, at *1; *Carmona v. Domino's Pizza, LLC*, 73 F. 4th 1135, 1137 (9th Cir. 2023); *Immediato v. Postmates, Inc.*, 54 F.4th 67, 77 (1st Cir. 2022).

Those decisions by the Ninth and First Circuits are consistent with case law in this District, where two courts—one before *Saxon* and one after—have concluded that last-mile delivery drivers fall within the Section 1 exemption. In *Ward v. Express Messenger Systems, Inc.*, this Court denied a motion to compel arbitration, even though the plaintiffs "made only *intrastate* deliveries in Colorado," because the plaintiffs were "directly responsible for transporting goods in interstate commerce" by "handl[ing] goods that travel[ed] through interstate commerce." 413 F. Supp. 3d 1079, 1085-87 (D. Colo. 2019) (Wang, J.). And in *Brock v. Flowers Food, Inc.*, decided after *Saxon*, the court adopted the "thorough analysis" of cases like *Rittman* and *Waithaka* to hold that a driver who "orders . . . products from bakeries across state borders, signs off on them at his warehouse, loads them onto his trucks, and delivers them" was "engaged in interstate commerce" within the meaning of Section 1. --- F. Supp. 3d ----, No. 1:22-cv-02413-CNS-MEH, 2023 WL 3481395, at *6 (D. Colo. May 16, 2023).

Amazon relies on non-binding and inapposite cases to support its narrow reading of

5

*Saxon*. *See* Mot. at 9-10. In *Lopez v. Cintas Corp.*, the Fifth Circuit concluded that the Section 1 exemption did not apply because the plaintiff "belongs to a class of workers that picks up items from a local warehouse and delivers those items to local customers, with an emphasis on sales and customer service." 47 F.4th 428, 432 (5th Cir. 2022). The Fifth Circuit contrived support for its holding based on a purported circuit split between *Rittmann* and *Waithaka*, on the one hand, and *Wallace v. GrubHub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020), on the other. But *Wallace* involved the distinct factual scenario of local food delivery drivers and is entirely consistent with *Rittman*, *Waithaka*, and *Saxon*. *See Singh v. Uber Techs., Inc.*, 67 F.4th 550, 558-59 (4th Cir. 2023) (explaining that "[o]n one side of the line are those whose work occurs within the flow of interstate commerce" and citing *Waithaka* and *Rittman*, and "[o]n the other side of the line are workers who engage in primarily local economic activity with only tangential interstate connections," and citing *Wallace*).

In *Mathis v. Kerr*, also relied on by Amazon, the Oklahoma Court of Appeals simply held that "we cannot find Plaintiffs played a direct and necessary role in the free flow of goods across borders" because "Plaintiffs are only engaged in the local last leg delivery of goods to consumers." ECF No. 25-9 at 9, ¶ 17. But that conclusion runs contrary to *Saxon*, and as explained in the dissent, ignores the role of the plaintiffs in completing the chain of the interstate delivery process. *Id.* at 15, ¶ 6 (dissent). The unpublished California superior court decisions Amazon cites are similarly short on analysis and incorrect on the law. *See* Mot. at 10.

Finally, to the extent that these authorities do not answer questions regarding what it means to be "engaged in interstate commerce," this Court must interpret that language in accordance with the ordinary meaning of those words in 1925, when the FAA was passed. *See*

6

*New Prime Inc.*, 139 S. Ct. at 539. Sources from the time of the FAA's passage make clear that Plaintiffs and other last-mile delivery drivers here are "engaged in interstate commerce." *See, e.g.*, Bouvier's Law Dictionary and Concise Encyclopedia 532 (8th ed. 1914) (explaining that a good is in interstate commerce from the time it is "actually shipped or started in the course of transportation to another state or foreign country" until it reached its final destination, even if the final leg of that journey was entirely within a single state); *Phila. & R.R. Co. v. Hancock*, 253 U.S. 284, 285 (1920).

**B.     The Arbitration Provisions are Unenforceable Under Colorado Law.**

Because the FAA does not apply to the arbitration provisions at issue here, the Court must decide whether—independent of the FAA and U.S. Supreme Court case law interpreting it—the arbitration provisions are enforceable as a matter of Colorado law. They are not.

*1. Claims for unpaid wages are not arbitrable as a matter of Colorado law.*

Amazon ignores that claims for unpaid wages under the Colorado Wage Act—the foundation for Plaintiffs' wage-and-hour claims—are not arbitrable. As the Colorado Supreme Court has explained, the "Colorado Wage Claim Act prohibit[s] employers from requiring employees to submit disputes over compensation to arbitration." *Lambdin v. Dist. Ct.*, 903 P.2d 1126, 1131 (Colo. 1995); *see also Cagle v. Mathers Fam. Tr.*, 295 P.3d 460, 470 (Colo. 2013). To be sure, when the FAA applies to the dispute at issue, it likely preempts *Lambdin*'s non-waiver rule. *See Grohn v. Sisters of Charity Health Servs. Colorado*, 960 P.2d 722, 727 (Colo. App. 1998). But when, as here, the FAA does not apply, *Lambdin* is binding.

The Colorado Supreme Court has not had occasion to decide whether Colorado Anti-Discrimination Act (CADA) claims or claims under the Denver Wage Theft Ordinance are

7

similarly exempt from arbitration. But Colorado courts have held that language conferring the right to file "civil actions in Colorado courts" prohibits enforcement of contracts that waive that right. *Morris v. Towers Fin. Corp.*, 916 P.2d 678, 679 (Colo. App. 1996); *see* CADA, C.R.S. § 24-34-306 (providing workers the right "to file a civil action in a district court in this state"); Den. Mun. Code 58-6 (providing workers with the right to bring a "civil action in a court of competent jurisdiction") [2].

2. *Alternatively, class action waivers are unenforceable as a matter of Colorado law.*

Alternatively, even if the Court concludes that Plaintiffs' claims are arbitrable as a matter of Colorado law, the arbitration provisions at issue here are unenforceable because they require Plaintiffs to waive their right to participate in class actions. While class action waivers within arbitration provisions are enforceable as a matter of federal law under the FAA, *see, e.g.*, *AT&T v. Concepcion*, 563 US 333, 352 (2011), the FAA has no application here. *Supra* Part A. Although the Colorado Supreme Court has not had occasion to decide whether class action waivers are enforceable as a matter of state law, the court would likely rule they are not.

Before *Concepcion*, courts around the country reasoned that, as a matter of state law, class action waivers are unenforceable.[3] And after *Concepcion*, courts have continued to hold

---

[2] The Court need not decide whether Plaintiffs' CADA claims are arbitrable because Plaintiffs have not yet pled those claims, which are still being exhausted.

[3] This includes courts applying the law in Alabama, Arizona, California, Florida, Georgia, Illinois, Kentucky, Massachusetts, Michigan, Missouri, New Jersey, New Mexico, Ohio, Oregon, Pennsylvania, Washington, West Virginia, and Wisconsin. *See, e.g., Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010); *Jones v. DirecTV, Inc.*, 381 F. App'x 895 (11th Cir. 2010); *Chalk v. T- Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2009); *Lowden v. T-Mobile, USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008); *Davis v. Chase Bank USA*, 299 F. App'x 662 (9th Cir. 2008); *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49 (1st Cir. 2007); *Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007); *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007).

that class action waivers are unenforceable under state law when the FAA does not apply. *See, e.g.*, *Pace v. Hamilton* Cove, 295 A.3d 1251, 1258 (N.J. App. Div. 2023); *T.S. Kao, Inc. v. N. Am. Bancard, LLC*, No. 1:16-CV-4219-SCJ, 2017 WL 8682258, at *3 (N.D. Ga. Dec. 15, 2017). These decisions are based on the important public policies underlying the class action device, especially in cases involving workers or consumers. *See, e.g.*, *Feeney v. Dell Inc.*, 908 N.E.2d 753, 763 (Mass. 2009).

These same considerations apply with equal force in Colorado. Colorado courts have explained that class actions are critical to the pursuit of justice and the efficient administration and enforcement of the law. They provide a vehicle for plaintiffs with small claims and little power to nevertheless access judicial relief for themselves and for others who may be too fearful to come forward. *See Jackson v. Unocal Corp.*, 262 P.3d 874, 880 (Colo. 2011) (class actions allow parties to aggregate "relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor" (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997))). And they ensure that the law is adequately enforced and that the courts are not overburdened with a multiplicity of individual suits alleging common issues. *Id.* Given these important purposes of the class action device, Colorado has a "policy of favoring the maintenance of class actions." *Id.* (internal quotation marks omitted).

It is therefore likely that Colorado courts would conclude that class action waivers are unenforceable and against public policy. *See Rademacher v. Becker*, 374 P.3d 499, 500 (Colo. App. 2015) ("Colorado courts will not enforce a contract that violates public policy."). To the extent that the Court decides to address the issue but has doubts that the Colorado Supreme Court would resolve it consistently with Plaintiffs' argument here, the Court should certify the issue to

9

the Colorado Supreme Court. *See* Colo. R. App. P. 21.1(a).

**C.     As a Non-Signatory, Amazon Cannot Enforce the Arbitration Provisions.**

Even if the Court concludes that the FAA applies or that Plaintiffs' claims are arbitrable and the arbitration provisions are in theory enforceable under Colorado law, the Court should still deny Amazon's motion to compel arbitration because Amazon does not have the contractual authority to compel arbitration.

Amazon seeks to compel arbitration based solely on arbitration provisions between Plaintiffs and their direct employer DSPs, not Amazon. In general, "when a requirement to arbitrate is created by an agreement, it can only be invoked by and enforced against a signatory to that agreement." *N.A. Rugby Union LLC v. USA Rugby Football Union*, 442 P.3d 859, 867 (Colo. 2019). That is because "[i]t is well-settled that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* at 863 (internal quotation marks omitted).

Because Amazon is not a signatory, it must prove that it falls within one of the narrow exceptions to that rule. General principles of state law—not any arbitration-specific doctrine—determine whether a non-signatory can enforce an arbitration agreement, and the purported "policy favoring arbitration" does not come into play. *See Santich v. VCG Holding Corp.,* 443 P.3d 62, 65-66 (Colo. 2019).

*1.   Amazon cannot enforce the arbitration provisions as a third-party beneficiary.*

Amazon argues that it can enforce the arbitration provisions between each Plaintiff and their employer DSP as a third-party beneficiary. It asserts that "courts routinely have held that Amazon is entitled to enforce the arbitration agreement between a delivery service provider and

10

its employee." Mot. at 14. But in support, it cites just one unpublished California superior court case that addressed Amazon's third-party beneficiary status in a conclusory sentence without analysis. *See* ECF No. 25-13, at 7.

Under Colorado law, "[a] third-party beneficiary may enforce a contract only if the parties to that contract intended to confer a benefit on the third party when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party." *Schneider v. SRC Energy, Inc.*, 424 F. Supp. 3d 1094, 1100 (D. Colo. 2019) (internal quotation marks, citation omitted). The most obvious evidence of intent to benefit a third party is an agreement expressly mentioning that third party. Indeed, "a nonparty generally cannot enforce contract provisions, or be bound by them, where the provisions do not specifically address the nonparty." *Chandler-McPhail v. Duffey*, 194 P.3d 434, 438 (Colo. App. 2008). Here, the arbitration provisions do not mention Amazon anywhere, despite being a form contract provided by Amazon for use in a registration process required by Amazon. *See* ECF No. 25-1, Ex. A.

That intentional omission of any mention of Amazon—despite its involvement in the registration process and substantial control over many aspects of the DSP-driver employment relationship—is evidence that the parties to the arbitration provisions did not intend to confer on Amazon the ability to enforce the agreement. *See, e.g.*, *Winter Park Real Estate Invests., Inc. v. Anderson*, 160 P.3d 399, 406 (Colo. Ct. App. 2007) (that non-party's name was not mentioned in contract was evidence that parties did not intend to benefit non-party); *Everett v. Dickinson & Co.*, 929 P.2d 10, 14 (Colo. Ct. App. 1996) (assuming that omission of nonparty from agreement was "purposeful" and concluding that court could "reasonably infer that the parties did not intend that the [omitted nonparty] be a beneficiary of the arbitration clause").

Despite this omission, Amazon counters that it can enforce the agreement because Plaintiffs agreed to arbitrate any claims against "Covered Parties," and, according to Amazon, it meets the agreement's definition of a "Covered Party," which includes "clients" of the DSP. See ECF No. 25-1. But Amazon's one-sentence conclusory assertion that it is a client is insufficient to meet its burden to prove that the parties intended to confer on it the right to enforce the arbitration provisions. *See Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 699 (10th Cir. 2012); *see also San Juan Constr., Inc. v. W.R., Berkley Syndicate Mgmt. Ltd.*, 2022 WL 1451914, at *3 (D. Colo. May 9, 2022). Here, like the non-signatory in *Patton*, Amazon has failed to "meet [its] burden of showing . . . . what the term ['clients'] means in the arbitration agreement and how their relationship with [the DSPs] meets that definition." *See* 504 F. App'x at 699. That failure alone dooms its motion to compel arbitration as a third-party beneficiary.

Even had it tried, it is far from evident that Amazon would be able to show that its relationship with the DSPs meets the definition of a "client," which the provisions do not define. Black's Law Dictionary defines "client" as a "person or entity that employs a professional for advice or help in that professional's line of work." Black's Law Dictionary (11th ed. 2019). In other words, "client" generally refers to someone who hires an independent professional to provide expertise that the professional also offers to other clients in their "line of work." The term certainly does not unambiguously refer to the unique relationship between Amazon and the DSPs. Unlike the typical professional who offers their services to many clients, DSPs are entities created at the behest of Amazon for the sole purpose of hiring drivers to deliver packages for Amazon. Indeed, DSPs are not "professionals" at all, as they are not required to have particular expertise or experience. Instead, Amazon trains the DSPs by sharing its own logistics expertise.

And although it is not unusual for a client to dictate the overall parameters of the work done by a professional, Amazon's control of the DSPs' work goes far beyond that to dictating everything from how DSPs structure their day to the exact routes drivers must follow to deliver packages.[4] Moreover, to the extent it is ambiguous whether Amazon is included in the definition of "client," the arbitration provisions should be construed against Amazon. *See U.S. Fidelity & Guaran. Co. v. Budget Rent-A-Car Systems, Inc*., 842 P.2d 208, 211 (Colo. 1992) (en banc).

  2.  *Amazon cannot enforce the agreement based on agency principles.*

Amazon also contends that, as a non-signatory, it can enforce the arbitration agreements "under agency principles because Plaintiffs allege that the DSP employers are Amazon's agents." Mot. at 15. To begin, Plaintiffs have not alleged that the DSPs *are* Amazon's agents. Instead, they have alleged that Amazon exerts a degree of control over DSPs' package delivery business and employees that is *akin to* the degree of control in an agency relationship. And Plaintiffs certainly have not alleged that the DSPs act as Amazon's agents in all circumstances, or that the DSPs were acting as Amazon's agents when they agreed to arbitration. Thus, Amazon's reliance on the allegations in the complaint is misplaced, and the question is whether Amazon has met its burden of proving that it can enforce the arbitration provisions under Colorado agency law. It has not. Indeed, Amazon takes care to avoid even suggesting that the DSPs had actual authority to act as its agents in signing the arbitration provisions. And it certainly has not produced evidence of any authority. That is fatal to its argument because, under traditional principles of agency, only an agent with "actual authority" can bind an undisclosed

---

[4] *See* Am. Compl. ¶¶ 16-37; *see also* Lauren Rosenblatt, *Delivery company files class action on behalf of 2,500 Amazon branded delivery partners*, Seattle Times (Apr. 8, 2022), https://tinyurl.com/4tsbzev5.

principal to a contract.[5] Restatement (Third) of Agency § 6.03 (2006); *see Fresquez v. Trinidad Inn, Inc.*, 521 P.3d 399, 409 (Colo. Ct. App. 2022). Because Amazon has not shown that the DSPs had actual authority to enter the agreement on behalf of Amazon, the DSPs could not bind Amazon, regardless of what Plaintiffs alleged in the complaint.

Moreover, even if the DSPs did have actual authority to act as Amazon's agents—which they did not—an agent can bind an undisclosed principal to an agreement only if they intend to act for the principal when signing the agreement. Restatement (Third) of Agency § 6.03, cmt. c (explaining that "an undisclosed principal does not become a party to a contract when the agent does not intend to act for the principal"). Thus, it is not enough for Amazon to show an agency relationship generally. It must also show that the DSPs intended to act as agents for Amazon when they took the specific action of agreeing to the arbitration provisions. Here, Amazon has submitted no evidence that the DSPs were authorized to or intended to act on Amazon's behalf when they agreed to arbitration. Indeed, the language of the agreements contradicts that position because it is a "Mutual Agreement" between "the Employee and Company" (i.e., the DSP) to arbitrate any disputes between them. By requiring the DSPs to arbitrate any claims they have against the employee and allowing the DSPs to compel arbitration of any claims by the employees against them, the provisions demonstrate that they were intended to apply to the DSPs individually, not as agents for Amazon.

In short, Amazon has "failed to identify the requirements to establish an agency theory,

---

[5] Here, the principal was undisclosed because, as described below, the agreement omitted any mention of Amazon and focused on the obligations of the DSPs themselves. *Cf. Rocky Mountain Exploration, Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 232-33 (Colo. 2018) (principal was not undisclosed where agreement explicitly mentioned that agent had "other investors or partners" and referred to "third parties who have agreed to participate in this transaction")

or facts which meet such requirements sufficient to allow the nonsignatory Defendants to compel Plaintiffs to arbitrate." *Santich v. VCG Holding Corp.*, 2020 WL 1529182, at *2 (D. Colo. Mar. 30, 2020)). As a result, Amazon's motion should be denied on this basis too.

    3. *Alternatively, Plaintiffs are entitled to limited discovery and a trial.*

For the reasons described above, Amazon has not met its burden of producing any facts in support of its third-party beneficiary or agency status. The Court should therefore deny Amazon's motion as a matter of law. But if the Court finds that Amazon has successfully placed its status in dispute, Plaintiffs respectfully request that the Court order discovery and a trial on the limited issue of Amazon's ability to enforce the arbitration provisions, particularly whether Amazon is a "client" of the DSPs and whether the DSPs had actual authority to enter into the agreement on Amazon's behalf, because those are material disputes of fact that warrant discovery and a summary trial under the FAA. *See* 9 U.S.C. § 4; *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) (if there is a "genuine issue of material fact, then a trial on the existence of the arbitration agreement is required").

## CONCLUSION

For the forgoing reasons, Amazon's motion to compel arbitration should be denied.

Respectfully Submitted,

*/s/ Valerie L. Collins*

Valerie L. Collins, No. 57193
David H. Seligman, No. 49394
Alex Hood, No. 42775
Juno E. Turner
TOWARDS JUSTICE
303 E. 17th Ave. Suite 400
Denver, CO 80203

15

(720) 441-2236
david@towardsjustice.org
valerie@towardsjustice.org
alex@towardsjustice.org
juno@towardsjustice.org

Toby J. Marshall
Eric R. Nusser
TERRELL MARSHALL LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
(206) 816-6603
tmarshall@terrellmarshall.com
eric@terrellmarshall.com

Shelby Leighton
PUBLIC JUSTICE
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
sleighton@publicjustice.net

Hannah Kieschnick
PUBLIC JUSTICE
475 14th St., Suite 610
Oakland, CA 94612
(510) 622-8150
hkieschnick@publicjustice.net

David Muraskin
FARMSTAND
712 H Street NE, Suite 2534
Washington, DC 20002
(202) 630-3095
david@farmstand.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, I filed the foregoing via CM/ECF, and CM/ECF will generate a Notice of Electronic Filing on all counsel who have entered an appearance in this matter.

*/s/ Valerie L. Collins*