**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-02099-NYW-SBP

LEAH CROSS,
MARCO GRANGER-RIVERA,[1]
RYAN SCHILLING, and
CASSIE WHINNIE, individually and on behalf of those similarly situated,

      Plaintiffs,

v.

AMAZON.COM, INC., and
AMAZON LOGISTICS, INC.,

      Defendants.

---

**ORDER**

---

This matter comes before the Court on the Defendants Amazon.com, Inc. and Amazon Logistics, Inc.'s Motion to Compel Arbitration and Dismiss or Stay Claims Pending Arbitration (the "Motion to Compel" or "Motion"), [Doc. 25, filed November 6, 2023], filed by Defendants Amazon.com, Inc. and Amazon Logistics, Inc. (together, "Defendants" or "Amazon"). Plaintiffs Leah Cross, Marco Granger-Rivera, Ryan Schilling, and Cassie Whinnie, proceeding both individually and on behalf of all others similarly situated (together, "Plaintiffs"), have filed a Response to Motion to Compel Arbitration, [Doc. 38], to which Defendants have filed a Reply, [Doc. 42]. The Court finds that oral argument will not materially assist in the disposition of the Motion to Compel. Upon review of the Parties' briefing, the entire docket, and the applicable case law, this Court

---

[1] The Clerk of Court is **DIRECTED** to update the docket and caption to reflect the hyphenation of Plaintiff Marco Granger-Rivera's last name. *See, e.g.*, [Doc. 24 at ¶ 20].

respectfully **GRANTS in part** and **DENIES in part** the Motion.

## BACKGROUND

The following overview is based on the allegations in the Amended Class Action Complaint (the "Amended Complaint"), [Doc. 24], as well as the unrebutted declarations submitted in connection with the Motion to Compel, *see, e.g.*, [Doc. 25-1].  Amazon is a multinational corporation with hundreds of billions of dollars in annual revenue.  [Doc. 25 at ¶ 2].  As a "commercial seller of electronic and consumer goods," Amazon delivers its products to customers' homes and businesses throughout the United States.  [*Id.* at ¶ 25].  To do so, Amazon relies upon local transposition and logistic companies known as Delivery Service Partners ("DSPs").  [*Id.* at ¶ 26].  DSPs provide what is known as "last-mile delivery," [*id.* at ¶ 27], driving packages from Amazon warehouses to customers' homes or businesses.  According to the Amended Complaint, DSPs "effectively serve as Amazon's agents to facilitate deliveries."  [*Id.*].

The relationship between Amazon and DSPs is multifaceted.  Amazon equips DSPs with "everything they need to become operational"; DSPs may obtain delivery vehicles through an Amazon partner; DSPs often depend on payments from Amazon to make payroll; Amazon terminates DSPs whose drivers fail to meet Amazon's delivery requirements; Amazon recruits delivery drivers and provides applicant information to local DSPs for interviews; Amazon directs DSP drivers as to "where to make deliveries, in what order, and what route to take"; and Amazon closely monitors delivery driver conduct and performance.  [*Id.* at ¶¶ 27–29, 31–32, 35–37].

Plaintiffs are current and former "Amazon delivery driver[s]" in Colorado.  [*Id.* at ¶¶ 18–21].  Although they were not directly employed by Amazon, they were employed by various DSPs which, as discussed above, share a close relationship with Amazon.

*See* [*id.* at ¶¶ 44, 52, 54, 72].  The Amended Complaint alleges that Amazon's demanding work conditions and requirements effectively prevent DSP drivers from taking any rest breaks during their shifts.  *See* [*id.* at ¶ 61].  Plaintiffs further allege that "Amazon's work quotas and extensive workplace surveillance cause devastating human costs to delivery drivers who, as a condition of maintaining their livelihoods working for the company, are forced to suffer degrading experiences like urinating in bottles, defecating in the back of delivery vehicles, or holding their urine to the point of risking harm to their health, including urinary tract infections."  [*Id.* at ¶ 63].  These dynamics are allegedly well known to Amazon, whose facility "trash cans are full of urine-filled bottles, as are trash cans at gas stations located near Amazon facilities."  [*Id.* at ¶ 64–65].  And DSP drivers with typical female anatomy face additional challenges keeping up with Amazon's demands.  *See* [*id.* at ¶¶ 72–82].

The Amended Complaint sets out five claims, each brought individually as well as in a representative capacity on behalf of one of three different classes.  First, all Plaintiffs bring a claim for unpaid wages under the Colorado Wage Claim Act individually and on behalf of the "Rest Break Class," which is preliminarily defined as "all employees who delivered packages for Amazon as DSP drivers in Colorado from six years prior to the filing of this lawsuit through final judgment" ("Count I").  [*Id.* at ¶¶ 83, 85–91].  Second, all Plaintiffs bring a claim for unpaid minimum wages and overtime under the Colorado Minimum Wage Act individually and on behalf of the Rest Break Class ("Count II").  [*Id.* at ¶¶ 92–97].  Third, all Plaintiffs bring a claim for civil theft individually and on behalf of the Rest Break Class ("Count III").  [*Id.* at ¶¶ 98–106].  Fourth, the Amended Complaint includes allegations in support of a claim under the Colorado Anti-Discrimination Act

("CADA") by Plaintiffs Leah Cross and Cassie Whinnie individually and on behalf of the "Disparate Impact Class," which is preliminarily defined as "all employees who have typical female anatomy and delivered packages for Amazon as DSP drivers in Colorado" ("Count IV").  [*Id.* at ¶¶ 83, 107–21].  However, the Amended Complaint alleges that the CADA claim is still being exhausted and that "Plaintiffs will amend to add such a claim following the administrative exhaustion."  [*Id.* at ¶ 121].  Fifth and finally, Plaintiff Cassie Whinnie brings a claim for unpaid wages under the Denver Minimum Wage and Wage Theft Ordinance individually and on behalf of the "Denver Wage Theft Class," preliminarily defined as "all workers who delivered packages for Amazon as DSP drivers in the City and County of Denver" ("Count V").  [*Id.* at ¶¶ 83, 122–26].

Amazon has moved to compel arbitration.  [Doc. 25].  Among other materials, Amazon submits the Declaration of Alexis Cantwell-Badyna ("Ms. Cantwell-Badyna"), an Amazon employee responsible for aspects of Amazon's DSP program.  [Doc. 25-1].  Ms. Cantwell-Badyna declares that Plaintiffs electronically agreed to a Mutual Agreement to Individually Arbitrate Disputes (the "Arbitration Agreement") during their online registration processes.  [*Id.* at ¶¶ 1, 3, 7–10].  Declarations on behalf of the individual DSPs echo this assertion.  *See, e.g.*, [Doc. 25-2].  Plaintiffs do not dispute that they signed this Arbitration Agreement or otherwise present any evidence in their opposition to the Motion.  *See generally* [Doc. 38].

The Arbitration Agreement includes the following language:

**Covered Claims.**  Except as explained in the section "Claims Not Covered" below, this Mutual Agreement to Individually Arbitrate Disputes (this "Agreement") covers all past, current, and future grievances, disputes, claims, issues, or causes of action (collectively, "claims") under applicable federal, state or local laws, arising out of or relating to (a) Employee's application, hiring, hours worked, services provided, and/or employment

with the Company[2] or the termination thereof, and/or (b) a Company policy or practice, or the Company's relationship with or to a customer, vendor, or third party, including without limitation claims Employee may have against the Company and/or any Covered Parties (defined below), or that the Company may have against Employee.

. . .

The Employee and the Company each specifically acknowledges and agrees that any claims brought by the Employee against any of the Covered Parties, whether brought jointly or severally with claims against the Company, shall be subject to arbitration under this Agreement. "Covered Parties" means the Company, any entity formerly or currently owned, affiliated, controlled or operated by the Company (a "company entity"), clients of the Company or a company entity, and the former and current officers, directors, managers, employees, owners, attorneys, agents, and vendors of the Company and/or a company entity and/or clients of the Company.

. . .

**Waiver of Class, Collective, Consolidated and Representative Action Claims.**  Each of the Employee and the Company expressly intends and agrees, to the absolute maximum extent permitted by law, that: (a) class action, collective action, or consolidated action procedures are hereby waived and shall not be asserted in arbitration or in court, nor will they apply in any arbitration pursuant to this Agreement; (b) representative action procedures are hereby waived and shall not be asserted in arbitration or in court, nor will they apply in any arbitration pursuant to this Agreement; (c) each will not assert class action, collective action, consolidated action or representative action claims against the other in arbitration or court or otherwise; and (d) the Employee and the Company shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person.  No arbitrator selected to arbitrate any claim covered by this Agreement is authorized to arbitrate any claim on a class, collective, consolidated, or representative basis.

In the event the waiver of representative actions is found to be unenforceable in whole or in part, then the representative action will be heard in court, not arbitration, as to the portion of the representative claim to which the waiver is found to be unenforceable and all other Covered Claims will remain subject to arbitration.  In that event, the representative

---

[2] The term "Company" is undefined in the Arbitration Agreement, *see, e.g.*, [Doc. 25-1 at 6–8], but all seem to agree that it refers to the relevant DSP, and not Amazon.

claim in court shall be stayed until the arbitration is concluded, unless such stay is contrary to applicable law.

Notwithstanding any provision in the applicable arbitration rules, a court of law must resolve any dispute concerning the validity and enforceability of the Agreement, and the validity, enforceability or interpretation of the provisions pertaining to class, collective, and representative action waivers. The arbitrator must resolve all other disputes, including the arbitrability of claims pursuant to such other provisions.

. . .

**Severability.**  If any provision of this Agreement to arbitrate is adjudged to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such adjudication shall not affect the validity of the remainder of this Agreement to arbitrate.  The only exception is that this Agreement is not, and shall never be construed as, reformed to be, or enforced as if it were, an agreement to arbitrate claims on a class, collective, consolidated, or representative basis.  Stated differently, under no circumstance will a claim be allowed to proceed in arbitration as a class action, collective action, consolidated action, or representative action.

[Doc. 25-1 at 6–8].[3]  The Motion to Compel is now fully briefed, [Doc. 25; Doc. 38; Doc. 42], and ripe for resolution.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that contractual agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 3 of the FAA obligates courts to stay litigation on matters that the parties have agreed to arbitrate, while section 4 authorizes a federal district court to compel arbitration for a dispute over which it would have jurisdiction.  *See* 9 U.S.C. §§ 3–4.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead

---

[3] The Court cites to the document and page numbers generated by this District's Case Management/Electronic Case Files system, rather than the page numbers assigned by the Parties.

mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  And Colorado state law contains analogous provisions in the Colorado Uniform Arbitration Act ("CUAA").  *See, e.g.*, Colo. Rev. Stat. § 13-22-206.

But, because "arbitration is a matter of contract," the Court cannot require a party "to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation omitted).  Indeed, "[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).  The party seeking to compel arbitration bears the burden of establishing that the matter at issue is subject to arbitration.  *See Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012); *GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1162 (D. Colo. 2001).  "Unlike the general presumption that a particular issue is arbitrable when the existence of an arbitration agreement is not in dispute, when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).  "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

## ANALYSIS

## I.    Whether Amazon May Enforce Plaintiffs' Arbitration Agreements

At the outset, the Parties dispute whether Amazon may enforce arbitration clauses found in contracts between Plaintiffs and the various DSPs to which Amazon is not a

formal party.  *See, e.g.*, [Doc. 25-3 at 13–15].  Amazon contends that it has the contractual authority to enforce these agreements either as their third-party beneficiary or under principles of agency law.  *See* [Doc. 25 at 13–15].  The Court agrees with Amazon as to the former theory and need not reach the latter.

"Colorado law recognizes that a person not a party to an express contract may bring an action on the contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely incidental benefit of the contract."  *Baker v. Wood, Ris & Hames, Pro. Corp.*, 364 P.3d 872, 881 (Colo. 2016). "The critical fact that determines whether a nonsignatory is a third-party beneficiary is whether the underlying agreement manifests an intent to confer specific legal rights upon the nonsignatory."  *N.A. Rugby Union LLC v. U.S. Rugby Football Union*, 442 P.3d 859, 865–66 (Colo. 2019) (cleaned up).  "[A] nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if the parties to the contract so intend."  *Parker v. Ctr. for Creative Leadership*, 15 P.3d 297, 298 (Colo. App. 2000).  "While the intent to benefit the non-party need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both."  *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994).

Defendants argue that "the contracting parties showed an intent for their arbitration agreements to benefit Amazon and other clients of the DSP employers."  [Doc. 25 at 14]. Amazon emphasizes that the claims at issue in this litigation fall within the claims covered by the Arbitration Agreement and suggests that it is a "Covered Party" for purposes of the contract because it is the DSPs' "client."  *See* [*id.*].  Plaintiffs respond that the Arbitration

Agreement's "intentional omission of any mention of Amazon" demonstrates that the parties did not actually intend to confer a benefit upon Amazon.  *See* [Doc. 38 at 12]. They suggest that Amazon's "conclusory" assertion that it is a "Covered Party" under the Arbitration Agreement because it is the DSPs' client is "insufficient," and they question whether Amazon meets the definition of a "client."  [*Id.* at 13–14].

It is undisputed that the Arbitration Agreement does not name Amazon, *see, e.g.*, [Doc. 25-1 at 6–8], although that is not the end of the inquiry.  To be sure, the Court heeds Plaintiffs' authority that "a nonparty generally cannot enforce contract provisions, or be bound by them, where the provisions do not specifically address the nonparty." *Chandler-McPhail v. Duffey*, 194 P.3d 434, 438 (Colo. App. 2008).  But Plaintiffs do not assert, nor does the law support the proposition that, the omission of a nonparty's name is dispositive as to third-party beneficiary status.  *See, e.g.*, *Winter Park Real Est. & Inv., Inc. v. Anderson*, 160 P.3d 399, 406 (Colo. App. 2007); *Everett v. Dickinson & Co., Inc.*, 929 P.2d 10, 14 (Colo. App. 1996).  Here, Amazon's close relationship with both the DSPs and the Plaintiffs, illustrated by the Amended Complaint and Defendants' evidentiary materials, compels the conclusion that the Arbitration Agreement is intended to benefit Amazon.

Considering the "surrounding circumstances" that tie Amazon to the Arbitration Agreement, *see Winter Park Real Est. & Inv., Inc.*, 160 P.3d at 406, the omission of Amazon's name is not dispositive.  Plaintiffs themselves recognize that the Arbitration Agreement constitutes "a form contract provided by Amazon for use in a registration process required by Amazon," and that Amazon maintains close "involvement in the registration process and substantial control over many aspects of the DSP-driver

employment relationship."  [Doc. 38 at 12]; *see also Chandler-McPhail*, 194 P.3d at 439 (finding "structure" relevant to assessing third-party beneficiary status).  Indeed, Plaintiffs refer to themselves as "Amazon delivery drivers" throughout the Amended Complaint. *See, e.g.*, [Doc. 24 at ¶¶ 1, 18–21].  And each Arbitration Agreement extends to "Covered Parties," a term broadly defined to encompass "the [DSP], any entity formerly or currently owned, affiliated, controlled or operated by the [DSP] (a "company entity"), clients of the [DSP] or a company entity, and the former and current officers, directors, managers, employees, owners, attorneys, agents, and vendors of the [DSP] and/or a company entity and/or clients of the [DSP]."  *See* [Doc. 25-1 at 6].  While the Parties disagree about how to apply dictionary definitions for terms like "client," the Court finds no reasonable dispute that Amazon is either a client or a vendor of the DSPs such that it is a "Covered Party." *See Copper Mountain Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009) ("To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language."); *see also Smith v. Amazon.com Servs., Inc.*, 2:21-cv-12811-SRC-AME, 2022 WL 1002099, at *2 (D.N.J. Apr. 4, 2022) (noting that language of arbitration agreement with respect to covered parties can "reflect[] the mutual intention" of the parties to allow covered parties to enforce the agreement).  The Court finds that Amazon is a third-party beneficiary of the contract DSPs use to onboard "Amazon delivery drivers" to deliver Amazon packages in Amazon-branded vehicles wearing Amazon uniforms under Amazon's supervision.[4]

---

[4] Plaintiffs also argue:

> [I]f the Court finds that Amazon has successfully placed its status in dispute, Plaintiffs respectfully request that the Court order discovery and a trial on the limited issue of Amazon's ability to enforce the arbitration provisions,

## II.     Federal Arbitration Act

On the merits, the principal issue is whether and to what extent the Arbitration Agreement is enforceable under federal or state law.  The relevant statutes are the Federal Arbitration Act and the Colorado Uniform Arbitration Act.  Because Defendants essentially concede that at least one of Plaintiffs' claims (Count I) is not arbitrable under the CUAA, *see* [Doc. 42 at 6], the Court begins by assessing the extent to which the FAA applies to the Amended Complaint.

"The FAA provides generally that arbitration agreements are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 250 (2024) (quoting 9 U.S.C. § 2).  However, the FAA exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  This exclusion for "transportation workers" must be construed narrowly.  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118–19 (2001).

---

particularly whether Amazon is a "client" of the DSPs and whether the DSPs had actual authority to enter into the agreement on Amazon's behalf, because those are material disputes of fact that warrant discovery and a summary trial under the FAA.

[Doc. 38 at 16].  Plaintiffs cite authority for holding trials where there is a genuine dispute of material fact as to the existence of an Arbitration Agreement.  *See, e.g.*, *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005).  But Plaintiffs, who have not submitted any factual materials in connection with their briefing, *see generally* [Doc. 38], fail to meet their burden to justify trial or discovery where Amazon's third-party beneficiary status appears to present a straightforward legal question.  Considering the rationale behind the Court's determination with respect to Amazon's third-party beneficiary status, the Court agrees with Defendants that "[t]here is no need to go on a fishing expedition for discovery," [Doc. 42 at 10], and concludes that Amazon may enforce the Arbitration Agreement, *see N.A. Rugby Union LLC*, 442 P.3d at 866 ("Nonsignatories who are intended third-party beneficiaries of an agreement containing an arbitration clause are bound by that agreement.").

Amazon argues both that its Arbitration Agreement is not a "contract[] of employment," and that Plaintiffs do not belong to a "class of workers engaged in foreign or interstate commerce."  *See* [Doc. 25 at 5–12].  For the reasons that follow, the Court concludes that Amazon's arguments are unpersuasive.  Plaintiffs have met their burden to show that they are exempt from the FAA as transportation workers.

### A.    Contract of Employment

The exemption's first prong looks at whether the relevant arbitration clauses are found within "contracts of employment."  9 U.S.C. § 1.  The Supreme Court has explained that "the term 'contracts of employment' refer[s] to agreements to perform work."  *New Prime Inc. v. Oliveira*, 586 U.S. 105, 121 (2019).  The question is thus whether "the arbitration clause being enforced . . . is . . . contained in a contract of employment."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n.2 (1991).

Amazon argues that the Arbitration Agreement is a "separate, standalone agreement" that is not contained within any broader employment agreement.  [Doc. 25 at 6].  Amazon further submits that "the obligation to arbitrate under the Agreement arises before any employment relationship forms and regardless of whether any employment relationship forms."  [*Id.* at 6–7].  Plaintiffs respond that "on their face, the arbitration provisions are clearly part of drivers' broader 'contracts of employment.'"  [Doc. 38 at 3].

The Court respectfully agrees with Plaintiffs that the Arbitration Agreement is contained within a contract of employment.  Defendants' evidence shows that the Arbitration Agreement was signed by Plaintiffs as the "Employee" parties during the "online registration process" associated with their employment applications for various

DSPs.  *See* [Doc. 25-1 at ¶ 5]; *see also* [*id.* at 6–8].  And the DSPs have all attested to the relationship between the Arbitration Agreement and their hiring processes as follows:

> When [the DSP] wanted to hire a new employee as a Delivery Associate, [the DSP] required that person to complete an "onboarding" process before they started working.  During onboarding, the prospective employee provided certain information to [the DSP], registered with Amazon as a [DSP] delivery driver, and reviewed and accepted an Arbitration Agreement.

[Doc. 25-2 at ¶ 4]; *see also* [Doc. 25-3 at ¶ 4; Doc. 25-4 at ¶ 4; Doc. 25-5 at ¶ 4; Doc. 25-6 at ¶ 4; Doc. 25-7 at ¶ 4; Doc. 25-8 at ¶ 4].  Plaintiffs are correct that "Amazon cannot unilaterally sidestep the Section 1 exemption simply by putting the arbitration provisions in a separate, standalone document, especially where, as here, that document is signed during employee onboarding and required as a step in the hiring process."  [Doc. 38 at 3]; *see also Abram v. C.R. Eng., Inc.*, No. 2:20-cv-00764-MWF-MRW, 2020 WL 5077365, at *4 (C.D. Cal. Apr. 15, 2020) (observing that, under position advanced by Amazon, employers "could circumvent section one by simply presenting employees with a contract outlining all terms and conditions of employment, followed by a separate arbitration agreement, even if that agreement compels arbitration of employment disputes").  The authority cited by Defendants involving Amazon and DSPs is distinct because, as Plaintiffs observe, [Doc. 38 at 4–5], the relevant contractual relationship in that case was between Amazon and the DSPs, not the DSPs and their individual employees, *see Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 596 (4th Cir. 2023).  When a DSP requires an employee to agree to arbitrate employment disputes before she starts working, *see, e.g.*, [Doc. 25-2 at ¶ 15 ("Only after successfully completing all of the steps in the onboarding process could a prospective employee become a [DSP] Delivery Associate and deliver packages.")], the agreement is contained in a contract of employment.

Amazon faults Plaintiffs for failing to rebut its position that the Arbitration Agreement cannot be a contract of employment where "it is binding before, and regardless of whether, an employment relationship forms." *See* [Doc. 42 at 2]. However, Defendants do not provide any legal authority for the proposition that this feature of the contracting process precludes the Arbitration Agreement from qualifying as a contract of employment for purposes of 9 U.S.C. § 1. *See* [Doc. 25 at 6–7; Doc. 42 at 2]. The point is particularly inconsequential here because Defendants themselves explain that Plaintiffs all performed work as employees for DSPs in connection with the Arbitration Agreements they signed. *See* [Doc. 25 at 2 ("Plaintiffs had different DSP employers.")]; *see also, e.g.*, [Doc. 25-2 at ¶ 15 (DSP declaring that "a prospective employee could not complete three separate onboarding tasks without first reviewing, accepting and agreeing to the Arbitration Agreement")]. The Court concludes that the Arbitration Agreement is part of a contract of employment for purposes of the FAA.

### B.    Class of Workers Engaged in Interstate Commerce

Next, the Parties dispute the extent to which Plaintiffs belong to a "class of workers engaged in foreign or interstate commerce." In other words, Amazon contends that Plaintiffs are not transportation workers for purposes of the exemption's residual clause. *See Bissonette*, 601 U.S. at 253. That assessment takes two steps: first determining the relevant class of workers and then assessing whether that class of workers is engaged in interstate or foreign commerce. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 456 (2022). The Supreme Court has recently explained that the class of workers to which an individual belongs is based on what its members do for their employers, not what their employers do generally. *See id.* Once the class is properly defined, "any class of workers directly

involved in transporting goods across state or international borders falls within § 1's exemption." *Id.* at 457.  To qualify for the exemption, "transportation workers must be actively 'engaged in transportation' of . . . goods across borders via the channels of foreign or interstate commerce." *Id.* at 458; *see also id.* (transportation workers "must at least play a direct and necessary role in the free flow of goods across borders" (quotation omitted)).

At *Saxon*'s first step, Amazon asserts that Plaintiffs "belong to a class of local delivery drivers" because they "make strictly local deliveries, exclusively within the state of Colorado."  [Doc. 25 at 8].  Plaintiffs do not meaningfully dispute this characterization of the relevant class of workers.  *See* [Doc. 38 at 5–8].  Considering the Amended Complaint's emphasis on Plaintiffs making local deliveries of products that have traveled interstate, *see* [Doc. 24 at ¶ 39 ("Those packages traveled on airplanes or trucks across state lines to reach Amazon facilities, where Amazon delivery drivers retrieved them and brought them to Amazon's Colorado customers.")], and considering Plaintiffs' role in Amazon's operations, the Court finds that Plaintiffs belong to a class of local delivery drivers that conduct last-mile delivery of interstate shipments.  *See Saxon*, 596 U.S. at 456.

Turning to *Saxon*'s second step, Amazon argues that local delivery drivers are too removed from interstate commerce to qualify for the exemption.  [Doc. 25 at 8–12].  Both sides cite cases arising under similar fact patterns that predate and postdate *Saxon*.  [*Id.*; Doc. 38 at 5–8].  None is binding, although the issue is currently pending before the Tenth Circuit.  *See Brock v. Flowers Food, Inc.*, 673 F. Supp. 3d 1180 (D. Colo. 2023), *appeal docketed*, No. 23-1182 (10th Cir. May 25, 2023).  This Court concludes that Plaintiffs, a

class of local delivery workers contracted by Amazon to complete Amazon's interstate deliveries, are sufficiently engaged in interstate commerce to qualify as transportation workers.  *See Saxon*, 596 U.S. at 457 ("[I]t is too plain to require discussion that the loading or unloading of an interstate shipment by the employees of a carrier is so closely related to interstate transportation as to be practically a part of it." (quotation omitted)).  That is because last-mile delivery of interstate Amazon shipments is "part of an integrated interstate journey," rather than "a separate and independent intrastate journey taking place before or after the [shipment's] interstate journey."  *See Fraga v. Premium Retail Servs.*, 61 F.4th 228, 238 (1st Cir. 2023).  This Court therefore agrees with those courts that have found that drivers making last-mile deliveries of interstate shipments are actively engaged in the interstate transportation of goods.  *See, e.g.*, *Miller v. Amazon.com, Inc.*, No. 21-36048, 2023 WL 5665771, at *1 (9th Cir. Sept. 1, 2023); *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915–19 (9th Cir. 2020); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 17–26 (1st Cir. 2020).

This Court is respectfully unpersuaded by the Fifth Circuit's contrary reasoning.  On similar facts, that court determined that once goods reached a local "warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce."  *Lopez v. Cintas Corp.*, 47 F.4th 428, 433 (5th Cir. 2022).  But as the Honorable Charlotte N. Sweeney noted, *Saxon* "explicitly rejected an interpretation of § 1 under which 'only workers who physically move goods or people across foreign or international boundaries' qualify for its exemption."  *Brock*, 673 F. Supp. 3d at 1187 (quoting *Saxon*, 596 U.S. at 461).  The Supreme Court's decision that the FAA exempts "airline employees who physically load and unload cargo on and off planes traveling in

interstate commerce," *Saxon*, 596 U.S. at 457, supports focusing on Plaintiffs' relationship to the interstate shipment of goods by Amazon.  Plaintiffs, like the airline workers in *Saxon*, handled goods that crossed state lines, without themselves crossing state lines, to facilitate the goods' interstate transportation by their employer.  That means Plaintiffs are actively engaged in transporting goods across state borders.

The FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  Plaintiffs are transportation workers who agreed to arbitrate in the context of their employment contracts with various DSPs, exempting them from the FAA.

## III.    Colorado Uniform Arbitration Act

With the FAA inapplicable, the next issue is whether Colorado law provides a separate basis for compelling arbitration of some or all of Plaintiffs' claims.  Unlike in certain disputes that implicate the FAA's exemption for transportation workers, *see, e.g.*, *Brock*, 673 F. Supp. 3d at 1189–90, Plaintiffs do not argue that their FAA exemption forecloses compelling arbitration pursuant to state law, *see* [Doc. 38 at 8 ("Because the FAA does not apply to the arbitration provisions at issue here, the Court must decide whether . . . the arbitration provisions are enforceable as a matter of Colorado law.")].  Indeed, the Arbitration Agreement itself provides that "[i]f, for any reason, the FAA or federal common law is found not to apply to this Agreement (or its agreement to arbitrate), then applicable state law shall govern," [Doc. 25-1 at 8], and the Parties accept that Colorado law applies, [Doc. 25 at 12; Doc. 38 at 8]; *see also see Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

Like the FAA, the CUAA provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract."  Colo. Rev. Stat. § 13-22-206(1).  Unlike the FAA, the CUAA does not exempt transportation workers.  *See Brock*, 673 F. Supp. 3d at 1190.  Defendants thus take the position that the CUAA provides an independent basis for arbitrating all claims in the Amended Complaint.  *See* [Doc. 25 at 13].  In response, Plaintiffs contend (1) that claims for unpaid wages are not arbitrable under Colorado law and (2) that, even if they are, "the arbitration provisions at issue here are unenforceable because they require Plaintiffs to waive their right to participate in class actions."  [Doc. 38 at 8–11].

## A.    Arbitrability

The Court first considers whether Colorado law supports compelling arbitration of Counts I, II, III, and V.[5]  As to Count I, which arises under the Colorado Wage Claim Act, Plaintiffs contend that Colorado law prohibits arbitrating any claims under that statute.

---

[5] Within the allegations labeled "Fourth Claim for Relief," the Amended Complaint states that "Plaintiff Cross is in the process of administratively exhausting a claim for discriminatory or unfair employment practices pursuant to C.R.S. § 24-34-401 *et seq.* on behalf of a class of similarly situated drivers and Plaintiffs will amend to add such a claim following the administrative exhaustion."  [Doc. 24 at ¶ 121]; *see also* [*id.* at ¶ 24].  As Plaintiffs have not sought an amendment as of the date of this Order, the Court finds that the Amended Complaint does not contain either an individual or collective Count IV at this time.  *See Holt v. Florissant Fire Protection Dist.*, No. 23-cv-01798-NYW-MDB, 2023 WL 7328149, at *3 (D. Colo. Nov. 7, 2023).  The allegations corresponding to Count IV therefore need not be considered for purposes of the Motion to Compel because they are not currently at issue in this litigation and any opinion with respect to their arbitrability would be advisory.  *See* [Doc. 38 at 9 n.2 ("The Court need not decide whether Plaintiffs' CADA claims are arbitrable because Plaintiffs have not yet pled those claims, which are still being exhausted.")].

*See* [Doc. 38 at 7].  Defendants do not contend otherwise, *see* [Doc. 42 at 6], and the Court concludes that Plaintiffs are correct.

The Colorado Wage Claim Act provides that "[a]ny agreement, written or oral, by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void."  Colo. Rev. Stat. § 8-4-121.  The Colorado Supreme Court has held that "[t]he plain meaning" of that provision "is that an agreement to arbitrate that conflicts with the rights established by the Wage Claim Act cannot be enforced against the employee" because it constitutes an impermissible waiver of statutory rights.  *Lambdin v. District Ct. in and for the 18th Jud. Dist. of the Cnty. of Arapahoe*, 903 P.2d 1126, 1130 (Colo. 1995).  Accordingly, Plaintiffs' Count I under the Colorado Wage Claim Act is not subject to arbitration.  *See id.*

As to Counts II and III, Plaintiffs characterize the Colorado Wage Claim Act as "the foundation for Plaintiffs' wage-and-hour claims."  [Doc. 38 at 8].  However, the Amended Complaint makes clear that Counts II and III arise under the Colorado Minimum Wage Act, either directly with respect to Count II, *see* [Doc. 24 at ¶¶ 93–95], or indirectly with respect to Count III via Colorado's civil theft statute, *see* [*id.* at ¶¶ 99–104].  But the Colorado Supreme Court specifically confined its ruling in *Lambdin* to the Colorado Wage Claim Act and its nonwaiver provision.  *See Lambdin*, 903 P.2d at 1130 n.10 ("Our holding in this case is limited to the validity of an arbitration clause to the extent it restricts an employee's right to bring a civil suit to recover wages pursuant to the Colorado Wage Claim Act, §§ 8-4-101 to -126.").  And Defendants are correct that "Plaintiffs do not discuss these statutes"—meaning the statutes underlying Counts II and III—in their

briefing.  [Doc. 42 at 7]; *see also* [Doc. 38 at 8–9].  Plaintiffs have not directed the Court to any legal authority that would apply or support extending *Lambdin* to Counts II and III.

As to Count V, Plaintiffs concede that "[t]he Colorado Supreme Court has not had occasion to decide whether . . . claims under the Denver Wage Theft Ordinance are similarly exempt from arbitration."  [Doc. 38 at 8–9].  Highlighting a provision of the Denver Municipal Code which grants the right to bring a "civil action in a court of competent jurisdiction," *see* Den. Mun. Code § 58-6(a), Plaintiffs contend that the Colorado courts "have held that language conferring the right to file 'civil actions in Colorado courts' prohibits enforcement of contracts that waive that right," [Doc. 38 at 9 (quoting *Morris v. Towers Fin. Corp.*, 916 P.2d 678, 679 (Colo. App. 1996))].  However, tracking *Lambdin*, Plaintiffs' authority focuses on the Colorado Wage Claim Act's nonwaiver provision.  *See Morris*, 916 P.2d at 679.  And as discussed above, this Court respectfully agrees with Defendants that *Lambdin* does not extend past Colo. Rev. Stat. §§ 8-4-101 through -126, as the opinion itself cautioned.  *See Lambdin*, 903 P.2d at 1130 n.10.  Plaintiffs have not directed the Court to any comparable provision of law that covers Count V.

For the reasons discussed above, it appears that Count I is not subject to arbitration under the CUAA but that Counts II, III, and V are.

## B.    Enforceability

In the alternative, Plaintiffs contend that the underlying agreements to arbitrate are unenforceable because they contain impermissible class action waivers.  *See* [Doc. 38 at 9–11].  Plaintiffs recognize that "class action waivers within arbitration provisions are enforceable as a matter of federal law under the FAA," [*id.* at 9 (citing *AT&T Mobility LLC v. Concepcion*, 563 US 333, 352 (2011))], but because the FAA does not apply, they

assert that the Colorado Supreme Court would decide the issue differently, *see* [*id.*]. Collecting authority from other jurisdictions, Plaintiffs argue that it is "likely that Colorado courts would conclude that class action waivers are unenforceable and against public policy," and they suggest that if this Court has any "doubts," then certifying the question to the Colorado Supreme Court is warranted.  *See* [*id.* at 10–11].  Amazon responds that there are no grounds to establish a wholesale "prohibition on enforcing arbitration agreements with class action waivers."  [Doc. 42 at 8]; *see also* [*id.* ("Here, the strong public policy favoring arbitration as a method of dispute resolution and the freedom of contract override any policy favoring classwide resolution of Plaintiffs' claims.")].

The Court respectfully concludes that the briefing on this issue is misdirected. Defendants have not sought to enforce the waiver in the Arbitration Agreement with respect to any of Plaintiffs' class claims.  *See generally* [Doc. 25].  Instead, Plaintiffs have argued that the arbitration agreements are unenforceable on an individual level because they purport to waive all litigation on a collective level.  *See* [Doc. 38 at 8 ("[T]he arbitration provisions at issue here are unenforceable because they require Plaintiffs to waive their right to participate in class actions.")].   But whatever this Court might determine with respect to the enforceability of the class action waivers, Plaintiffs have not explained how that finding necessarily invalidates the Arbitration Agreement on an individual level.  *See* [Doc. 38 at 9–11].  Notably, the Arbitration Agreement contains a robust severability provision which Plaintiffs do not address.  *See* [Doc. 25-1 at 8 ("If any provision of this Agreement to arbitrate is adjudged to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such adjudication shall not affect the validity of the remainder of this Agreement to arbitrate.")].  Even if the provision

waiving class action proceedings is not enforceable, Plaintiffs have not met their burden to show that the Arbitration Agreement is invalid as to their individual claims for purposes of Defendants' Motion to Compel.

## IV.    Class Claims

Three of Plaintiffs' four claims[6] are subject to arbitration to the extent that they are brought individually.  Defendants argue that, because Plaintiffs must arbitrate certain of their individual claims, the class claims should be dismissed.  *See* [Doc. 25 at 15–16]. However, Defendants' sole authority is a case in which the Tenth Circuit concluded that collective claims could not proceed where the litigants lacked standing for their individual claims.  *See Thomas v. Met. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011) ("Prior to class certification, the named plaintiffs' failure to maintain a live case or controversy is fatal to the case as a whole.").  Because this authority does not concern a litigant's ability to bring a class claim while an individual claim is subject to arbitration, the Court concludes that Defendants have not met their burden as movants to show that dismissal of the class claims is warranted simply because related individual claims must be arbitrated.

Alternatively, Defendants argue that the class claims should be "stayed pending arbitration." [Doc. 25 at 16].  Defendants have neither sought to compel arbitration of the class claims nor to enforce any of the class action waiver provisions in the Arbitration Agreement, as discussed above.  Plaintiffs, for their part, do not appear to take a position on what should happen to their class claims if any of their individual claims are subject to

---

[6] No Count IV exists at this time.  *Supra* n.3.

arbitration.  *See generally* [Doc. 38].  Plaintiffs thus do not explicitly oppose a stay pending arbitration.

Considering the parallel relationship between the individual and class claims in the Amended Complaint, as well as the scope of the Parties' positions set out in the briefing on the Motion to Compel, the Court concludes in its discretion that the class claims shall be stayed.  *See Ingold v. AIMCO/Bluffs, L.L.C. Apts.*, 159 P.3d 116, 125–26 (Colo. 2007). Litigation with respect to Count I shall also be stayed pending arbitration of Plaintiffs' factually related individual wage claims, including Count II.  *See id.*; *see also* [Doc. 42 at 7 (Amazon arguing that "[b]ecause the overtime and minimum wage claims in Counts 2 and 3 (and Counts 4 and 5) are subject to arbitration, the CWCA claim in Count 1 should be stayed pending arbitration")].   However, for purposes of efficiency, the Court will administratively close, rather than stay, this litigation pending the arbitration.

This District's Local Rules provide that "[a] district judge . . . may order the clerk to close a civil action administratively subject to reopening for good cause." D.C.COLO.LCivR 41.2.  Administrative closure is construed as "the practical equivalent of a stay," *Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987), and is a way for the Court to manage its docket by "shelv[ing] pending, but dormant, cases[]" without a final adjudication, *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999). Demonstrating good cause to reopen an administratively closed matter is not onerous; rather, "good cause to reopen a case exists where the parties wish to litigate the remaining issues that have become ripe for review."  *Patterson v. Santini*, 631 F. App'x 531, 534 (10th Cir. 2015) (quotations omitted).

**CONCLUSION**

For the foregoing reasons, it is **ORDERED** that:

(1)     Defendants Amazon.com, Inc. and Amazon Logistics, Inc.'s Motion to Compel Arbitration and Dismiss or Stay Claims Pending Arbitration [Doc. 25] is **GRANTED in part** and **DENIED in part**; and

(2)     This case is **ADMINISTRATIVELY CLOSED** pending arbitration of Counts II, III, and V in Plaintiffs' individual capacities and may be reopened upon a motion of any Party for good cause shown.

DATED:  September 30, 2024                    BY THE COURT:

Nina Y. Wang
United States District Judge